[Crim. No. 6006.   Second Dist., Div. Three.   Jan. 24, 1958.]

THE PEOPLE, Appellant, v. FRED RALPH CICCHELLO et al., Respondents.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello and Lewis Watnick, Deputy District Attorneys, for Appellant.

Charles Hollopeter for Respondents.

SHINN, P. J.—Fred Ralph Cicchello and Sidney Sindell were charged by information in Count I with bookmaking; in Count II with unlawfully keeping and occupying a residence for the purpose of recording and registering bets on horse races; and in Count III with having recorded and registered a bet or bets on horse races. (Pen. Code, § 337a, subds. 1, 2, 4.) Upon the preliminary hearing defendants were committed for trial. They made a motion to set aside the information under section 995 of the Penal Code on the ground that they had been committed without reasonable or probable cause. The motion was granted and the People appeal.

The evidence at the preliminary hearing established the following facts. Gordon D. Evans and Joseph S. Deiro are police officers for the city of Los Angeles assigned to the administrative vice division. Each qualified as an expert witness with reference to bookmaking procedure in Los Angeles. In February 1957, Evans received information from a reliable informant that bookmaking was being conducted over telephone number Dunkirk 2-1944 which was listed at 229 North New Hampshire. The information was that the premises were a "call out spot," which, in the opinion of Officer Evans, is a place used by bookmakers for the purpose of telephoning bettors and receiving and recording bets.

Evans went to the location on the morning of February 20th. It consisted of an apartment on the second floor of a two-story duplex. There was one entrance, which was located at the top of a flight of stairs on the north side of the building. Sindell arrived at about 10:30 a. m. and Cicchello arrived at about noon. Evans did not see them leave. On the morning

of February 21st, Evans related to Deiro the substance of the information he had received and both officers went to the location. Cicchello was the first to arrive, followed by Sindell. Defendants left shortly after 6 p. m. in a car belonging to Cicchello.

The next day, February 22d, Evans, Deiro and several other officers went to the premises at about 9 a. m. Sindell arrived at about 10:30 a. m., Cicchello shortly before noon. The window blinds were drawn and the officers neither saw nor heard any activity inside the apartment; however, no one else was seen to enter or leave during the day. At approximately 6:45 p. m., defendants left the apartment and walked to Cicchello's car, which was parked on New Hampshire about half a block south of the duplex. Defendants entered the car and made a right turn onto Council Street, where they were stopped and arrested by Officer Deiro. Upon being asked whether he had formed an opinion with respect to defendants' activities in the apartment, Evans stated: "In my opinion they were conducting bookmaking up there because of the fact that they didn't live in the apartment. They were coming before racing hours and leaving after racing hours." In the opinion of Officer Evans, the customary working hours of bookmakers were from 10 a. m. until 6 p. m.

After placing defendants under arrest, the officers searched the car and discovered some empty manila envelopes and a pad of blank papers which, in Officer Deiro's opinion, was similar to pads commonly used by bookmakers to record bets. These were taken by the officers and were introduced in evidence over the objections of Cicchello and Sindell.

The officers returned to the apartment with defendants and entered it by means of a key taken from Cicchello. Inside the apartment the officers observed two telephones; the number of one of the telephones was Dunkirk 2-1944. They found a $74 telephone bill for Dunkirk 2-1944 which was listed to a Miss Cora May Jeffrey at that address. Their search disclosed a copy of the final edition of the National Daily Reporter for February 22, 1957; it contained handwritten notations. They also found three small rectangular slips of paper likewise containing handwritten notations; it was stipulated that the notations were in the handwriting of defendants. Evans testified that he made a comparison of the notations on the slips of paper with information obtained from defendants' copy of the National Daily Reporter; he stated his opinion that the slips were betting markers which represented

bets on horse races running on February 22d. Outside the window, the officers found some manila envelopes which were similar to those discovered in Cicchello's automobile; the envelopes were wrapped in a newspaper and contained some slips of paper which Evans stated to be betting markers. All the above items were taken from the apartment by the officers and were introduced in evidence over the objections of defendants.

Upon being questioned by the officers, Sindell admitted that he had been bookmaking in the apartment for the past three or four weeks and that some of the betting markers were his. Cicchello told the officers that he received $85 a week in return for answering the telephone, recording bets and assisting Sindell.

The question is whether the evidence disclosed probable cause for committing defendants for trial. There was probable cause if there was evidence which would lead a person of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178 [281 P.2d 250].) If the fact that defendants were bookmaking and recording bets in the apartment was established by competent and admissible evidence, probable cause was shown. (*Rogers* v. *Superior Court,* 46 Cal.2d 3 [291 P.2d 921].) If the only evidence produced against Sindell and Cicchello was incompetent and inadmissible, there did not exist probable cause to hold them to answer and the court properly granted their motion to set aside the information. (*Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23].)

The People argue that the search of the car and the apartment were incident to the arrest of Cicchello and Sindell and that the arrest was valid because the officers had reasonable cause to believe that defendants had committed a felony. We agree.

In our opinion, there was reasonable cause for the arrest of defendants. The officers had learned from a reliable informant that the apartment was being used by bookmakers as a "call out spot." They placed the apartment under observation during three consecutive days and saw defendants arrive in the late morning and leave in the early evening. Although they did not see or hear what defendants were doing inside the apartment, they saw no one else enter or leave. It was a reasonable inference that defendants did not

live in the apartment. While the fact that defendants regularly came around 10 a. m. and left around 6 p. m. would have no significance to the ordinary layman, the officers were familiar with the habits of bookmakers and were justified in acting upon their knowledge that these were the business hours of the professional bookmaker. Defendants make the point that they might have been in the apartment for any one of a number of legitimate purposes, and that no inference adverse to them can validly be drawn solely on account of their presence in the apartment. However, an analogous contention was advanced and rejected in *People* v. *Fischer*, 49 Cal.2d 442 [317 P.2d 967]. In that case, sheriff's deputies had information that bookmaking was being conducted over a specified telephone number at a particular address; the deputies went to the location; one of the deputies telephoned the number and attempted unsuccessfully to place a bet with an unknown man inside the premises; the deputies saw the accused step outside the front door with a racing form in his hand immediately after the conversation and just as the deputies were approaching. The court held that the arrest of Fischer was based upon reasonable cause. We conclude that the circumstances were sufficient to warrant a reasonable belief that defendants were occupying the apartment for the purpose of recording bets.

Since the arrest was lawful, the officers had the right to make a reasonable search of the premises under the immediate control of defendants and to seize evidence related to the offense. (*People* v. *Winston*, 46 Cal.2d 151, 161-163 [293 P.2d 40], and cases cited.) Thus a reasonable search of the car in which defendants were riding was proper and the evidence obtained thereby was not to be excluded. However, with respect to the search of the apartment, defendants argue that the premises were located more than half a block from the place where they were apprehended, and that the apartment was not in the immediate vicinity of the arrest, hence a search of the apartment cannot be justified as an incident to the arrest. The argument is without merit.

There would be no doubt of the officers' right to search the apartment had defendants been arrested while they were inside it or as they were leaving. We do not think the fact that defendants were apprehended in their car at some distance away affords any ground for a tenable distinction.

The officers' information and observations all related to defendants' activities in a specific place. The apartment was

their headquarters and their scene of operations. They used the car for transportation to and from their place of business and also to store unused envelopes and betting markers which they might need in the future. The arrest and search were contemporaneous and part of a single, continuous transaction. If it was a reasonable inference that defendants were recording bets in the apartment, it was also a reasonable inference that defendants' bookmaking paraphernalia was to be found there. The arrest occurred in the immediate vicinity of one of two places which the officers had reason to believe were being used by defendants for bookmaking purposes, namely, their automobile. The officers had definite information about the other. They did not stumble upon the apartment or go there in the mere expectation that something might turn up. We think that the officers were justified in making a search of the apartment and that the evidence obtained thereby was properly received.

It cannot be said that upon a trial a court or jury could not reasonably conclude that the testimony of the officers was sufficient to prove that defendants were guilty of bookmaking. The evidence before the magistrate disclosed probable cause for committing defendants for trial.

The order setting aside the information is reversed.

Wood (Parker), J., and Vallée, J., concurred.