[Crim. No. 7179. Second Dist., Div. Two. June 26, 1961.]

THE PEOPLE, Respondent, v. JOEY ANTHONY ALERIA, Appellant.

Robert A. Barnett, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant appeals from judgment of conviction of possession of narcotics, rendered after a nonjury trial. He was arrested in the lobby of the Chelsea Hotel at 504 South Bonnie Brae Street, Los Angeles, while under the influence of a narcotic, and his room in the hotel was forthwith searched, revealing seven capsules of heroin and a hypodermic outfit.

Appellant's counsel asserts as the sole point on appeal the following: ''Where the accused is arrested in the lobby of his hotel for being under the influence of narcotics, to search his hotel room without warrant as an incident to the arrest and use the contraband therein seized to convict the accused of possession of narcotics is unreasonable, illegal and violative of'' his constitutional rights.

It appears from the evidence most favorable to respondent that the police officers who effected the arrest on October 22, 1959, had received information and observed facts concerning appellant which justified a robust suspicion that he was engaged in possessing and selling narcotics; that he was himself an addict and probably was living in the Chelsea Hotel. On the afternoon of October 22nd Officers Dorrell and Fessler went to that hotel and exhibited to the clerk on duty a photo-

graph of defendant and the clerk said he lived in the hotel; at that moment descending footsteps on the stairs were heard and defendant appeared some 3 to 5 feet away from the officers. He was carrying the key to room 143. Officer Dorrell testified: "At that time he appeared to be under the influence of narcotics. . . . Well, his mouth was partly open, his eyes appeared to be partly closed, as if he was in a stuporous condition." Also: "He was a known user of narcotics to me, because I had examined him on July the 5th, 1959 and found, by the examination of his legs, that he was using narcotics. And he also stated to me at that time that he was a user of narcotics. And at the time I arrested him on October 22, I knew him as a user of narcotics and the symptoms that I observed coupled with the knowledge of his background, I was of the opinion that he was under the influence of narcotics at that time." Asked by the officer whether he lived in the hotel defendant said "No." The clerk in answer to a similar question said, "Yes, he is in room 143," and that he was registered as Sinatra (which, of course, was a false name). Defendant, in the immediate presence of the clerk and the officers, made no response to this. Though they had no warrant of any kind they then arrested defendant, took the key from his hand, escorted him up one flight of stairs and thence 20 to 30 feet down the hall to room 143, unlocked it with defendant's key and searched the entire room, finding the narcotics above mentioned. Defendant himself testified that he was then living in room 143. Neither he nor the clerk gave the officers permission to enter it.

After being brought into room 143 defendant told the officers that that was his room but they would not find anything; " 'Go ahead and search it.' " (He was at that time under arrest and in handcuffs.) Search they did, finding the seven capsules in a suitcase. Asked if they were his and if there were more, defendant said, " 'That is all there is. I don't have any more.' " Then a box containing two capsules of heroin was found and defendant said, " 'That is all there is, I don't have any more.' " When entering the police station: " 'I have got some more stuff wrapped up with that hype outfit.' " Unwrapping the hypodermic outfit Dorrell found a rubber containing more heroin, and defendant observed, " 'There is about three and a half grams there. I bought it yesterday, I paid $55 for it.' He said he had just had a fix about an hour before that. He said he used about three or four caps of narcotics a day."

In a discussion of a defense objection to receipt in evidence

of the heroin and hypodermic outfit which had been revealed by the room search, the prosecutor said: ". . . and in addition, Officer Dorrell's observation of the defendant's condition on the date of this arrest, all these things gave them probable cause to make an arrest on October 22, 1959." The court: "Counsel has agreed to that. Now, go one step further and tell me what the answer is." Defense counsel made no response to this but he later said: "I realize that the officers have testified that they saw the defendant in this hotel lobby, it appeared to them he was under the influence of narcotics. Now, it is probable that that would be in my opinion probable—I will concede for this argument here at least—well, without conceding I will say it could be interpreted to be probable cause for arresting him at that time." Appellant's brief on appeal makes no claim that the arrest itself was illegal and proceeds upon the tacit assumption that it was lawful.

Counsel comes to rest always upon the proposition that it was violative of appellant's constitutional rights to make a search at a distance from the place of arrest—up one flight of stairs and down the hall 20 to 30 feet.

Appellant's chief reliance is *Agnello* v. *United States,* 269 U.S. 20 [46 S.Ct. 4, 70 L. Ed. 145, 51 A.L.R. 409], which involved illegal sale of cocaine by several conspirators. A government agent saw such a transaction take place at the home of one of them named Alba. They searched not only his premises but also the residence of coconspirator Agnello which was several blocks away from the scene of the crime and arrest. This was held violative of Agnello's constitutional rights. The court said, in part (pp. 30-31 [269 U.S.]): "The legality of the arrests, or of the searches and seizures made at the home of Alba, is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests. But the right does not extend to other places. Frank Agnello's house was several blocks distant from Alba's house, where the arrest was made. When it was entered and searched, the conspiracy was ended, and the defendants were under arrest and in custody elsewhere. That search cannot be sustained as an incident of the arrests." This phrasing has created a plethora of decisions which turn upon the question of distance between place of arrest and place of search. Our courts have struggled with this mechanistic test but have concluded that distance is neither the sole nor the controlling consideration in most instances. The said Supreme Court, in *Harris* v. *United States,* 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399], used this lan-

guage: "This Court has also pointed out that it is only unreasonable searches and seizures which come within the constitutional interdict. The test of reasonableness cannot be stated in rigid and absolute terms. 'Each case is to be decided on its own facts and circumstances.'" (P. 150 [331 U.S.].) "The opinions of this Court have clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his immediate control." (P. 151 [331 U.S.].) "Nor can support be found for the suggestion that the search could not validly extend beyond the room in which petitioner was arrested." (P. 152 [331 U.S.].)

*United States* v. *Rabinowitz,* 339 U.S. 56, 63 [70 S.Ct. 430, 94 L.Ed. 653] : "What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case."

*People* v. *Ingle,* 53 Cal.2d 407, 412 [348 P.2d 577] : "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case."

The following factors are usually determinative,— whether the search is actually incidental to the arrest in point of both time and place, whether arrest and search form part of a continuous transaction, whether the place of search is under the actual or probable control of the suspect. The truth of the foregoing statement is exemplified by the following cases.

*People* v. *Dixon,* 46 Cal.2d 456, 459 [296 P.2d 557], recognizes control and proximity of a garage as sufficient warrant for search of same incident to a lawful arrest within defendant's residence. So do *People* v. *Bernal,* 174 Cal.App.2d 777, 781-782 [345 P.2d 140] and *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13 [300 P.2d 222] ; in the latter the arrest was made just outside defendant's apartment. In *People* v. *Lawrence,* 149 Cal.App.2d 435, 445 [308 P.2d 821], it appeared that the arrest was made in the entry hall to defendant's apartment and the court upheld an immediate search of her said residence as being a proper one made in the vicinity of the arrest and in an area under defendant's control. Where defendant was arrested in his driveway, a search of his house

was held justifiable in *People* v. *Montes,* 146 Cal.App.2d 530, 531-532 [303 P.2d 1064].

*People* v. *Gorg,* 45 Cal.2d 776, 781 [291 P.2d 469], holds that a search of a man's rented room was not lawful where "it was not incidental to the arrest, for it was at a distance from the place thereof and was not contemporaneous therewith." The separation in point of time was 48 hours and the search in question was made after one search had been completed and "had no reasonable relation to defendant's arrest." But *People* v. *Herman,* 163 Cal.App.2d 821, 826 [329 P.2d 989], rejects the fact of arrest "a short distance" from defendant's home as a controlling consideration on the legality of the search. *Hernandez* v. *Superior Court,* 143 Cal.App.2d 20 [299 P.2d 678], flatly rejects the distance test. Appellant had been arrested in a public street at a point 95 feet away from his home. The court held the search of the house was not incidental to the arrest, and at page 23 said: "In the present case the search of the home of petitioner and Taverez was not an incident to Taverez' arrest. He was in his automobile on a public street when the arrest was made, and when he was there taken into custody his arrest was completed. The fact that it turned out that Taverez' home was but 95 feet away from the place of his arrest does not change the complexion of this matter. His arrest was on a public street, not upon any part of the premises in which the apartment in which he lived was situated; and if we were to uphold a search of his home without a warrant because his home was but 95 feet from the place on the public street where he was arrested, we would necessarily have to uphold it if it were 95 blocks distant."

More specifically, the problem of distance has been dealt with in *People* v. *Cicchello,* 157 Cal.App.2d 158, 160 [320 P.2d 528], *People* v. *Vice,* 147 Cal.App.2d 269, 273 [305 P.2d 270], and *People* v. *Baca,* 184 Cal.App.2d 693 [7 Cal.Rptr. 864].

Cicchello, *supra,* involves an arrest made more than one-halfblock from defendant's apartment, which the officers promptly searched. The court said, at page 162 [157 Cal.App. 2d] : "We do not think the fact that defendants were apprehended in their car at some distance away affords any ground for a tenable distinction. The officers' information and observations all related to defendants' activities in a specific place. The apartment was their headquarters and their scene of operations. They used the car for transportation to and from their place of business and also to store unused envelopes and betting markers which they might need in the future.

The arrest and search were contemporaneous and part of a single, continuous transaction.''

In the Vice case, *supra,* it appeared that narcotics were found in defendant's hotel room and he was arrested in the west end of Sacramento (presumably many blocks away); the search preceded the arrest by a half hour or so but it was held to be part of a single transaction and valid.

*People* v. *Baca, supra,* 184 Cal.App.2d 693 (hearing denied), reveals that defendant was arrested five blocks from his home which was searched some 20 minutes before the arrest. This court recognized the absence of an exact formula covering such a case and emphasized the need for protection of the public in these matters, saying at page 698: ''In evaluating the situation with which the officers were faced it seems appropriate to quote the recent observation of this court in *People* v. *Hollins,* 173 Cal.App.2d 88, 93-94 [343 P.2d 174]: 'Our strong devotion to the cherished principle that the citizen shall not be subjected to unreasonable treatment at the hands of the agents of society must be tempered with some reasonable appreciation of the facts of life and of the great dangers and difficulties which beset the officer of the law in his effort to protect the community from the blighting scourge of the narcotic traffic.' In this connection we note the comment of the Supreme Court in the Ingle case, *supra,* page 414 [53 Cal.2d]: 'Police officers are guardians of the peace and security of the community; their problems are manifest and complex and they should not be held to accountability greater than that required of any other reasonable or prudent man under like circumstances.' '' We then concluded that defendant's home was his base of operations for the sale of narcotics (as in Cicchello, *supra*), and that the arrest and search were part of a single transaction and no violation of defendant's constitutional rights.

 Narrowing the discussion to the instant situation. Aleria was arrested in the hotel lobby and taken to his room, up one flight of stairs and 20 to 30 feet down the hall. That room was his rented abode and obviously under his control.

 Exclusive possession or control by the suspect is not essential to a valid search. (*People* v. *Flores,* 155 Cal.App.2d 347, 349 [318 P.2d 65]; *People* v. *Ross,* 149 Cal.App.2d 287, 289 [308 P.2d 37]; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 340 [244 P.2d 750]; *People* v. *Vice, supra,* 147 Cal.App. 2d 269, 274.)

In the Vice case, *supra,* it is said: ''In regard to the question

of exclusive control when the hotel also had access to the room, it has been held that where there was testimony that the defendant admitted the narcotics in the room belonged to him, there was no merit in the argument that unlawful possession might not be sustained for the reason that the evidence showed that another person had equal right and facility of access to the premises. (*People* v. *Gallagher,* 12 Cal.App.2d 434 [55 P.2d 889].)'' (P. 274 [147 Cal.App.2d].) We have such an admission by appellant at bar.

We have here no lapse of substantial time or distance,— close proximity in both respects.

Treating of a similar situation, Judge Kerrigan in the District Court for Northern California, in *United States* v. *Charles,* 8 F.2d 302, answered affirmatively the following question propounded by him: ''The question here presented is: May narcotic officers, who have arrested the proprietor of a hotel for a violation of the narcotic laws (Comp. St. § 6287g et seq.) committed in its lobby within their presence, and who immediately thereafter search his living quarters and storeroom for evidence of similar violations, seize intoxicating liquors found by them while so engaged?'' At page 302 it was said: ''The rule is thoroughly settled, that 'a lawfully arrested person may be searched for instruments, fruits, and evidences of the crime; and, if taken in commission of the crime in a building, the latter may be likewise searched to the extent that the offender's control and activities likely extended'. [Citations.] The absence of a search warrant in this case therefore is immaterial, and the only question is as to the extent of the right, not to search, but to seize.'' This case was cited with apparent approval in *People* v. *Dixon, supra,* 46 Cal.2d 456, 459, and in *People* v. *Bernal, supra,* 174 Cal. App.2d 777, 782. To the same effect, see *Sayers* v. *United States* (9th CCA), 2 F.2d 146, 147; *United States* v. *Seltzer,* (Dist. Ct. Mass.) 5 F.2d 364, 365.

The Vice case, *supra,* involves the search of a hotel room made a half hour after the arrest of its occupant and made across the city of Sacramento from the place of arrest, but it was upheld.

 It appears plain to us that whatever the factors of the particular problem may be, it is requisite to a valid search and seizure (absent consent) that there be shown a substantial nexus between the arrest and the search such that they may be held a continuous transaction. Here the defendant appeared in the hotel lobby while police were

showing his photograph to the clerk at the desk. ·He came close to the police, carrying his room key, 143, in his left hand, being obviously under the influence of a narcotic. Asked if he lived there, he said "no"; the clerk said he lived in number 143 under the name Sinatra; he made no denial; the key was taken from his hand by the police who arrested and handcuffed him and ushered him upstairs to his room, opened it with his key and made a fruitful search. There is no occasion to evaluate the "consent" given by defendant after entering the room, under arrest and in handcuffs. Concatenation of the above facts discloses an umbilical cord connecting arrest and search which is plain for all to see.

Judgment affirmed.

Fox, P. J., and McMurray, J., pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 23, 1961.

*Assigned by Chairman of Judicial Council.