[Crim. No. 1492. Fourth Dist. Mar. 27, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DOUGLAS CORRAO, Defendant and Appellant.

Gostin & Katz for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—This is an appeal from a judgment of conviction of one count charging possession of a narcotic and a second count charging possession of a concealable weapon by a person previously convicted of a felony. The case was tried by a judge sitting without a jury.

Defendant's sole contention on this appeal is that the narcotics and weapon received in evidence during the trial were discovered during an unlawful search.

During the early afternoon of December 23, 1960, Police Officers Wilson and Ritchie were ordered to investigate a complaint concerning defendant and they went to 2182 Julian Street, which was the address from which the complainant called the police. Defendant lived at this address. The officers encountered a Mrs. Ragsdale at the Julian Street address and identified themselves as police officers working on the narcotics squad. She said that she was the person who had telephoned the police and that she was in charge of the house. She told the officers that defendant was then in his room and that he had visitors with him. Her complaint was that defendant had numerous visitors and she suspected that he was dealing in narcotics because the visits were so short. Officer Wilson had known defendant for about a year and was aware of his "involvement" in narcotics. (Apparently defendant had been arrested for suspected narcotics violations, but he had never been convicted on such a charge.)

Mrs. Ragsdale pointed out the window of defendant's second-storey room. She said she would admit the officers to this portion of the house and displayed her keys. Mrs. Ragsdale then opened the door and preceded the officers up the stairs which opened onto a hallway. As he entered the hallway, Officer Wilson saw the defendant in the hallway. The officer approached the defendant and said, "Hello, Doug." The officer noted that the pupils of the defendant's eyes appeared to be constricted and that his manner was lackadaisical. The officer formed the opinion that defendant was under the influence of narcotics. He placed his hand on defendant's arm and asked him if he had a room there. Defendant walked into a nearby room off of the hallway. The

door was partially open. Inside the room, Officer Wilson saw Rudolph Lovato and Jesus Najera, both of whom he knew had previously been involved in the narcotics traffic.

Defendant approached Lovato and attempted to hand him two objects, which fell on the floor. The officer picked them up and discovered that they were two cellophane packages containing a powder. A search revealed a third cellophane packet on defendant's person and a loaded gun in a dresser drawer. Defendant was taken to the city jail where he was examined by the police physician about 5:30 p. m., three and a half hours after his arrest. The physician testified that defendant told him that he had last used heroin intravenously about a month and a half previously. However, the doctor observed four needle marks from one to three or four days old over a vein on defendant's arm. The doctor was of the opinion that defendant was not under the influence of narcotics at the time of his examination. In the doctor's opinion, the effects of heroin can wear off in three or four hours and the doctor said that his negative findings at 5:40 p. m. would not preclude the possibility that defendant was under the influence of narcotics at 2 p. m. On the trial, and at defendant's request, the court viewed the premises on Julian Street. As described by the witnesses, the upstairs portion of these premises included several rooms which were let to roomers. In addition, there was a common hallway, a living room, a kitchen and a bathroom which were used in common by all the tenants. The tenants had keys for their rooms and keys for the front door which was kept locked to prevent strangers from entering.

Mrs. Ragsdale was the administratrix of the estate of her deceased sister, to which the house belonged. She had keys to all inner and outer doors to the building. Her niece, Mrs. Dimry, occupied the downstairs portion of the house and assisted Mrs. Ragsdale in managing the rentals therein. Both Mrs. Dimry and Mrs. Ragsdale rented rooms and collected rent. Mrs. Ragsdale received from Mrs. Dimry rents collected by her and took care of repairs and complaints of tenants. Mrs. Dimry was not at home when the police officers were on the premises. Mrs. Ragsdale's authority was over her own, according to Mrs. Dimry, who also said that in her absence Mrs. Ragsdale had charge of the house. Mrs. Ragsdale had discussed with defendant complaints of another tenant about defendant's visitors and she also told him not to leave unwashed dishes in the sink of the community kitchen. Mrs.

Dimry had rented the room to defendant and his rent was paid up at the time of his arrest. The officers did not have a warrant when they arrested defendant and searched his room.

██ Defendant contends that the officers did not have any valid permission to enter the premises by any of the residents or other persons living on the premises who were authorized to give them permission to enter, and since the officers did not have any knowledge prior to entering the premises of the commission of any crime by defendant, anything observed after entering the premises was in violation of the defendant's constitutional right to be free from unlawful search and seizure. It is asserted that the information given to the officers by Mrs. Ragsdale was not sufficient to give the officers reasonable cause to believe that defendant had committed a crime. (Citing *People* v. *Covan,* 178 Cal. App.2d 416 [2 Cal.Rptr. 811]; *People* v. *Privett,* 55 Cal.2d 698 [12 Cal.Rptr. 874, 361 P.2d 602]; *People* v. *Van Eyk,* 56 Cal.2d 471 [15 Cal.Rptr. 150, 364 P.2d 326].)

It is not unlawful or unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].) ██ Here, the officers received a complaint from defendant's landlady as to his conduct. She suggested that he was trafficking in narcotics. Officer Wilson recalled that defendant had previously been arrested on a narcotics charge. Under the circumstances, the officers had a right to seek an interview with defendant.

Defendant argues that the police did not come to his door seeking an interview. He says that they broke into his private premises. In this connection, it is urged that the evidence shows, as a matter of law, that Mrs. Ragsdale did not have authority to admit the officers to the stairway and hall which they had entered before encountering defendant. (Citing *People* v. *Carswell,* 149 Cal.App.2d 395 [308 P.2d 852].)

The evidence supports the conclusion that defendant rented a room and certain privileges. He had the right to use the kitchen, bath and living room, but his use of these rooms was not exclusive; it was in common with other tenants. ██ Mrs. Ragsdale's retention of some control over the portion of the premises used in common by the tenants is evidenced by the fact that she ordered defendant to stop leaving dirty dishes in the kitchen sink. Where a landlord leases space in a building to several tenants and, in addition, provides facili-

ties for their common use, it had been often held that the landlord has *retained control* of the common facilities and the landlord may be held liable for failure to keep these areas in a safe condition. (*Harris* v. *Joffe,* 28 Cal.2d 418 [170 P.2d 454] ; *Spore* v. *Washington,* 96 Cal.App. 345 [274 P. 407] ; *Foster* v. *A. P. Jacobs & Associates,* 85 Cal.App.2d 746 [193 P.2d 971].)

Since Mrs. Ragsdale had a right to control the common areas, she could rightfully admit the officers to this portion of the house. (*People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469] ; *People* v. *Caritativo,* 46 Cal.2d 68 [292 P.2d 513] ; *People* v. *Hicks,* 165 Cal.App.2d 548 [331 P.2d 1003]. Compare *Teasley* v. *United States,* 292 F.2d 460; *Gillars* v. *United States,* 182 F.2d 962, 972.)

 Even if Mrs. Ragsdale exceeded her authority, it must be remembered that if someone with apparent authority consents to the entry, and the entry by the police is made in good faith, it is not unlawful. (*People* v. *Gorg, supra*; *People* v. *Caritativo, supra*; *People* v. *Yancy,* 196 Cal.App.2d 665 [16 Cal.Rptr. 766] ; *People* v. *Ransome,* 180 Cal.App.2d 140, 145 [4 Cal.Rptr. 347].) The officers may draw an inference of authority to authorize a search from circumstances. Such apparent authority has been found where the person present at and in charge of the premises has in his possession the keys to the premises and willingly permits the officers to enter. (*People* v. *Rodriguez,* 180 Cal.App.2d 534, 536 [4 Cal.Rptr. 456] ; *People* v. *Williams,* 189 Cal.App.2d 29, 38 [11 Cal.Rptr. 43] ; *People* v. *Misquez,* 152 Cal.App.2d 471, 479-480 [313 P.2d 206].) Prior to their entry, the officers were not informed that the defendant occupied or used any portion of the premises other than the room Mrs. Ragsdale pointed out to them. In these circumstances, the officers could reasonably assume that Mrs. Ragsdale had authority to admit them to the hallway on the second floor of the building.

Defendant suggests that only Mrs. Dimry could have authorized this entry, but the evidence does not support this contention. Clearly, Mrs. Ragsdale had the senior authority, although, if she had been present, Mrs. Dimry might have been authorized to admit the officers.

 While lawfully in the hallway, the officers observed the defendant. Officer Wilson approached the defendant, formed the conclusion that he was under the influence of a narcotic and placed defendant under arrest. The defendant contends that, under the facts related by the officer, his con-

clusion as to defendant's condition was not justified. Such an argument is more properly addressed to a trier of issues of fact than to an appellate court. (*People* v. *Newland,* 15 Cal.2d 678, 683 [104 P.2d 778].) It is not impossible to walk up to a person in a hallway and reasonably conclude from observation that he is under the influence of a narcotic. (*People* v. *Aleria,* 193 Cal.App.2d 352 [14 Cal.Rptr. 162]; *People* v. *Quinn,* 194 Cal.App.2d 172 [14 Cal.Rptr. 814].) The fact that, when examined three and a half hours later by a physician, the defendant was not under the influence of a narcotic, is explained by the doctor's testimony that the effects could have worn off in the interim.

Having arrested defendant in the hallway, the officer asked him if he had a room in the building and defendant, without speaking, walked inside his room through its open doorway. The officer followed, keeping him under observation, and saw the defendant attempt to conceal the packets which were later found to contain heroin. It was not until after the discovery of these packets, at which time the officer knew that defendant had possessed heroin in his presence, that the room was searched, another packet of heroin was found, and the loaded pistol was discovered. Defendant admitted that the pistol was his and that he knew it was loaded. Under these circumstances, defendant's contention that the officers should have stopped after observing him in the hallway and gotten a warrant to search his room is frivolous. Obviously, defendant's first impulse, on seeing the officers, was to get rid of the incriminating contraband. To require the officers to leave the area and obtain a search warrant would be to negative the efficacy of their efforts. Furthermore, it is well settled in California that no warrant need be obtained in order to conduct a reasonable search incident to a valid arrest. (*People* v. *Winston,* 46 Cal.2d 151, 162-163 [283 P.2d 40]; *People* v. *Pettyjohn,* 172 Cal.App.2d 188, 200 [342 P.2d 416]; *People* v. *Smith,* 166 Cal.App.2d 302, 304-305 [333 P.2d 208].) The case of *People* v. *Covan, supra,* 178 Cal.App.2d 416, relied upon by defendant, does not hold to the contrary. Since the evidence was lawfully obtained, nothing in the decision of *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081] would make the evidence inadmissible. Under the evidence, there is no question as to the defendant's guilt and he did not directly defend against the charge, either here or in the trial court. His only contention is that the physical evidence

was illegally seized. We have concluded that the police officers' action in arresting the defendant and seizing the evidence was lawful and that defendant's contention should be rejected.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1962.