[Crim. No. 8053.    Second Dist., Div. Two.    May 22, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. MAX RONALD NEWBERRY, Defendant and Appellant.

Max Ronald Newberry, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Stanley X. Cook, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Appellant Max Ronald Newberry, Roy Mits Nitta and James Franklin Greene were charged by information with possession of marijuana in violation of section 11530, Health and Safety Code. Motion under Penal Code section 995 was granted as to defendant Greene. After a nonjury trial defendants Newberry and Nitta were convicted. Newberry was sentenced to imprisonment for one year in the county jail. He appeals. Represented below by counsel of his own choice, he appears here in propria persona.

His primary contention is unlawful search and seizure and use of narcotics thus obtained to procure a conviction. The point is not well taken.

On February 20, 1961, at about 10 a. m., Los Angeles Police Officers Conrad and Teague, who were in plain clothes but driving a "felony car" easterly on Pico Street in Los Angeles,

passed defendant Greene who was walking on the sidewalk in the opposite direction; when he first saw the officers he looked startled; as they passed him he "fastly" looked back; Conrad, the driver, saw him in the rear view mirror as he looked back again and then ran diagonally across to the south side of the street, looked in the direction of the police once more and then disappeared from sight. The police car changed its course to south and Conrad again saw Greene walking fast and looking back in their direction. The police pulled over beside him and got out; Conrad showed his badge and said, "Police Officers." He testified that Greene appeared to be "in a dazed or drunken condition" and "seemed mummified, stuporous," with a slight stagger and his "eyes were dilated and watery"; there was no smell of alcohol on him and marijuana does not smell on the breath. In the officer's opinion Greene was under the influence of narcotics. He gave his name as James Greene but his social security card bore the name James Bartha. This he explained by saying he had changed his name because "my real name has a bad record. . . . I have been in jail for narcotics, petty theft, and burglary." Asked where he was going, he said, "to see a friend of mine named Max." Conrad said: "Well, do you want to go down there with us? I would like to check out your story, and see if you are telling the truth. Things don't look too good here, with you having this phony identification, and you have got a bad record; and we have had several burglaries in the area. We would like to check this out further." Greene: "Sure. Come on along, and I will show you." He took them to a residence, number 1406 South Dewey Street, and knocked on the door. Defendant-appellant Newberry came to the door, pulled the glass curtain aside and looked through the window of the door with his nose against the glass, about a foot away from Conrad. He saw that appellant's eyes were dilated and watery and formed the opinion that appellant was under the influence of marijuana at the time. The house was not darkened and the officer saw appellant's face for about three seconds. He said, "Police officers, we'd like to talk to you." Thereupon appellant dropped the curtain and the officer "heard thundering footsteps, running to the back of the house." Newberry had on slippers and the running footsteps were very loud. Though they had no warrant the officers forced the door and ran after appellant who was found in the bedroom standing by the bed. On top of it were two marijuana cigarettes which he had

placed there and under the pillow was a vial containing a green leafy substance, apparently marijuana. Conrad searched appellant and found some "debris" on him. Search of the house revealed two packages of cigarette papers in a woman's shoe box in a closet in the bedroom and one package of such papers on a shelf in the closet. The officers also found scattered through the house several celluloid or plastic bags containing green leafy material, a sandwich bag containing debris in a closet in the living room, another sandwich bag with green leafy material in a cardboard box under a dresser drawer in the bedroom, a partially smoked cigarette in an ash tray in the living room which was apparently marijuana, and a small burned cigarette in the drawer of a dresser, a partially smoked cigarette in a dresser drawer with a woman's undergarments.

The fact that the green leafy material found in these various items, which were seized by police, was marijuana is established by stipulation made by counsel to the effect that William King, a forensic chemist, would be deemed to have so testified.

Newberry was asked, "when was the last time he blasted a joint, and he stated that he just toked up this morning, just had one this morning before we got there"; that he "used" a couple of times a week; "And I [Conrad] said, 'Are you— you must be doing a little dealing, with all this stuff you've got here.' And he stated, 'I just deal to friends, and not to— I am not a real dealer.' . . . He said, 'What would you do if the police were coming in your door?' He said, 'I ran when you came to the door.' And he says—'I was scared.' "

■ In the foregoing statement we have accepted as true the testimony and other evidence favorable to respondent as we are required to do. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

■ ■ The breaking of the door and search of the person and of the house required as justification only probable cause to believe that a felony was being committed by appellant. "The courts are in substantial agreement as to what constitutes reasonable cause or probable cause such as will justify one in arresting or prosecuting another upon a criminal charge. We consider as a clear and comprehensive statement of the rule, that announced in *People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73], as follows: ' "There must be such a state of facts . . . as would lead a man of ordinary care and prudence to believe, or entertain an honest

and strong suspicion, that the person is guilty." ' " (*People* v. *Rodriguez,* 140 Cal.App.2d 865, 869 [296 P.2d 38].)

One who obviously was a user of marijuana and then under its influence guided the officers to the place where appellant lived, the place for which Greene had been headed when he saw the police. When appellant answered his knock, appellant's own face displayed the same appearance as did Greene's and the officer immediately concluded that he too was under the influence of marijuana, which fact constituted a misdemeanor committed in their presence (Health & Saf. Code, § 11721), giving cause for immediate arrest (Pen. Code, § 836, subd. 1). Upon mention of police appellant dropped the curtain and fled precipitately and loudly. There is no lack of precedents for the conclusion that this combination of circumstances warranted the officers in breaking into the house, pursuing the culprit lest he disappear or destroy contraband, and justified them in searching him and his place of residence. (See *People* v. *Garnett,* 148 Cal.App.2d 280, 283 [306 P.2d 571]; *People* v. *Edwards,* 142 Cal.App.2d 419, 420 [298 P.2d 664]; *People* v. *Lawton,* 186 Cal.App.2d 834, 835-836 [9 Cal.Rptr. 122]; *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *Moore,* 140 Cal.App.2d 870, 873 [295 P.2d 969]; *People* v. *Thymiakas,* 140 Cal.App.2d 940, 941-942 [296 P.2d 4].)

The foregoing review of the facts establishes the futility of appellant's argument that the evidence is insufficient to support the conviction. His contention that Officer Conrad's testimony is incredible fails to recognize the rule stated in *People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]: "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]"

The claim that Officer Conrad was not qualified to express an opinion as to whether appellant was under the influence of a narcotic cannot be sustained. It comes too late. This testimony was given at the preliminary hearing and no

objection was made thereto. In the superior court it was stipulated that the matter "may be determined by the Court upon the testimony taken at the preliminary examination; the Court to read and consider the transcript thereof with the same force and effect as though the witnesses who testified there testified here under oath, it may be deemed they did so testify." The right was reserved to each side to introduce additional evidence. Conrad did not testify in the superior court. After the trial had been running for most of a day appellant's counsel, in discussing the sufficiency of the evidence of probable cause, raised for the first time a question as to Conrad's qualification to testify as an expert, saying: "I just happened to think this morning, and looked through the transcript; there is nothing to show that the officer is qualified to express an opinion. I don't find any testimony in the transcript to show that he had ever seen anybody else under the influence of marijuana before, and in that respect I move to strike his testimony in the pages I referred to, on which he based his opinion, and his opinion, on the grounds that he is not qualified to express an opinion." The motion was denied.

Officer Conrad had been on the police force for 14 years and 2 months, of which time 2 years and 2 months were spent with the Wilshire felony detail. It is doubtful whether testimony that a person is under the influence of a narcotic requires expert qualifications on the part of the witness. (See *People* v. *Moore*, 70 Cal.App.2d 158, 165 [160 P.2d 857].) But if it be so considered, the failure of defendant's counsel to object to the officer's qualifications before he was permitted to express an expert opinion effected a waiver of the point. "Objections to an expert's qualifications must be made before his testimony is admitted. ■ A lack of qualification is usually established by cross-examination immediately after the witness has testified on direct examination that he is qualified as an expert, and before he is called on to express an opinion. In the absence of timely objection to his competency, the court may permit him to testify as an expert. And in accordance with general rules, an objection to his competency cannot be first raised on appeal." (19 Cal.Jur.2d § 295, p. 22.)

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.