[Crim. No. 7597.   Second Dist., Div. Three.   Aug. 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM VICTOR ROGERS, Defendant and Appellant.

Virgil V. Becker, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George Roth, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—In a nonjury trial, the appellant Rogers was found guilty of the crime of burglary in the second degree. The allegations of the information that he had suffered four prior felony convictions were found to be true. The defendant has appealed from the judgment and from the order denying his motion for a new trial.

The evidence before the trial court will be summarized. James T. Rumery, who was the chief storekeeper of the Associated Students Store at El Camino College in Los Angeles County, testified that he locked the store at about 4:35 p. m. on Friday, August 26, 1960. He was the last person to leave. A post office substation was maintained at the store. The store was not open during the weekend. When Mr. Rumery returned on the following Monday morning and unlocked the store, typewriters, cameras, records, cigarettes and all the cash and postal money orders in stock were missing; the safe was not there. The witness identified money orders shown to him and marked as Exhibit 2 for identification as being money orders which had been delivered to the store by the United States Post Office Department. On Monday morning, he observed a

door in the building from which a ventilation plate had been removed; the resulting opening was large enough to permit a person to pass through it.

James L. Lott, who was a maintenance man at El Camino College, testified that about 9 o'clock on Friday night he went into the store and cleaned it. There was nothing unusual about the store at that time. When he left, the premises were secured.

Donald Phillip Lechner, who was landscape supervisor at the college, testified that about 7:30 o'clock on a Sunday morning in August 1960, which might have been around the 28th, he observed an object about 20 feet from the Campus Center building; it was the safe from the bookstore. He called the officers and entered the store with them. The store was in disorder. In the building where the bookstore was located, there was a broken window; the opening "was big enough to crawl through." Inside the building, vents of a door had been smashed.

Frank S. Northrup, a police officer for the City of Los Angeles assigned to the narcotics division, testified that he arrested the appellant at a dwelling house on East 142d Street. When the officer entered the house, he had neither a search warrant nor a warrant for the appellant's arrest. The officers came to the vicinity of the premises about 9 p. m. on September 19, 1960. They entered the house at approximately one o'clock in the morning on September 20, 1960. It was a single family dwelling. The witness testified in part as follows: "We knocked on the door. At that time the door swung open . . . there was no door knob on the door. There was a hole at the bottom of the door that at one time apparently had held the door knob, but all there was was just a latch and hasp that held the door, but it was not together. . . . I observed a man standing in the center of the living room, whom I recognized as being a party by the name of Charlie Byrd. . . . My partner and I both identified ourselves as police officers and said, 'Charlie, can we talk to you?' . . . He said, 'Come in.' We entered. We said, 'You are Charlie Byrd, aren't you?' At that time he stated, 'No.' I asked him his name and he gave me a name that I can't recall, but he refused to admit that he was Charlie Byrd. . . . I said, 'You know we are narcotic officers, don't you, Charlie?' He said, 'Yes.' We asked him if there was any narcotics around the house. He stated, 'No.' . . . the defendant Rogers was in the living room also . . . I observed the defendant Rogers

over in the corner. My partner and I both approached him, asked him if he was using narcotics. Defendant Rogers stated, 'No.' We said, 'Do you mind if we look and see if you are using narcotics?' He stated, 'No, go ahead.' At the time he was just wearing an undershirt with just the straps over his shoulders. We made an examination of his arms and found what appeared to be fresh hypodermic marks on his arms.[1] . . . At the time I was talking to him he was under the influence of narcotics. . . . He was placed under arrest for violation of the State Narcotics Act at that time. . . . I asked the defendant which room he stayed in, in the house. He pointed toward one of the back rooms. I asked him if he had any narcotics in the room. He stated, 'No.' I said, 'Would you mind if we went back and looked through the room?' And he said, 'No, go ahead.' . . . My partner, the defendant and I went to the back room, which he pointed out as being his, made a search of this bedroom, and behind a dresser on the floor I found a brown wrapped package which contained a quantity of money orders [which the witness testified were the money orders marked as Exhibit 2 for identification]. . . . It was found on the floor behind a dresser in the bedroom. . . . I recovered a quantity of postage stamps that were in the dresser drawers and in a closet in his bedroom I recovered the typewriter and a movie projector. . . ." Thereafter, the officers made a further search of the house and found "some cartons of cigarettes, some phonograph records, some fillers for ball point pens." At the house after the articles were found, a conversation was had with the appellant. His statements were made freely and voluntarily. A postal inspector was present. The appellant said that the items of property which were found came from the junior college where he had committed a burglary. He further said that he and another person, whose identity he did not want to disclose, went to the college on a week end, threw a brick through a window, and entered the premises. The safe was rolled outdoors and opened by means of a sledge hammer. The money orders were taken, together with other items. He transported the stolen property to the house at which he was arrested.

On cross-examination, Officer Northrup testified that the man named Byrd had, in his opinion, been drinking but he would not say that he was intoxicated. Byrd did tell him,

---

[1] On *voir dire* examination, the witness said that he had been assigned to the narcotics detail for the previous five years. He had inspected "thousands" of arms for marks.

"You can't search the house without some papers." Byrd did not give the officers permission to search the house. At the time the officers went to the house, they had information that the appellant Rogers was involved in burglaries and that "possibly there could be money orders in the apartment." They had contacted postal inspectors and had been told that the only burglary that the inspectors could recall in that area where money orders had been taken had occurred at El Camino College. The postal inspectors came with them to the neighborhood of the appellant's residence. The objection of the People to inquiry by the public defender as to the identity of the informant who had told of the presence of money orders in the house was sustained. The witness saw the appellant in the front room when he entered. He asked the appellant if he was living at Byrd's house and Rogers said that he had been living there for the last four months. The witness was with the narcotics detail and his purpose in going to the premises was to pursue a narcotics investigation. He had not previously investigated the burglary of the college.

Kenneth B. Daws, a federal postal inspector, talked to the appellant Rogers on three different occasions. The last occasion was about midmorning of September 21. The appellant's statement at that time was freely and voluntarily made. As to the burglary, Rogers said that he had broken a glass in the front of the building and that then, to get into the storeroom, he had broken a door. They tried to get the safe into a vehicle but were unable to do so. A sledge hammer was used to open the safe.

Charles B. Byrd was called as a witness on behalf of the appellant. He rented the premises on East 142d Street. The appellant did not live there but was there on the night of the arrest. The witness did not invite any officer to come into the house. When the officers entered, Rogers was in the back bedroom. Byrd gave the officers no permission to search the house. On cross-examination, Byrd said that Rogers "spent nights, week-ends" with him sometimes.

The appellant William Victor Rogers testified in his own behalf. He said that he was not in the front living room when the officers came into the house, but was sitting on the bed in the back bedroom. Officer Northrup told him to come into the living room. The appellant did so. He gave no permission to the officers to search the bedroom. Byrd told them they could not search the house. The appellant said he was not involved in the burglary at the college. He did not bring

the items of property into the room; that was not his room. Sometimes he stayed overnight or for a week end at Byrd's house. A month or two before, a man by the name of Jackson was staying in that bedroom. The appellant never talked to Officer Northrup about the burglary. At the jail he told Inspector Daws that he knew nothing about the burglary. On cross-examination, the appellant admitted four prior convictions of felonies. He said that when he went into the living room, Officer Northrup looked at his arms. He had marks on his arms, some of which were fresh. He did not think he was then under the influence of narcotics but thought "it was about wore off"; he had been under such influence earlier. The appellant was placed under arrest. The officers then went into the bedroom. Rogers gave no permission for any search.

The appellant's motion to strike the testimony of Officer Northrup and Inspector Daws "with reference to both the matters found in the house and as to any alleged conversations," based on previous objections as to which a ruling was reserved, was denied.

The only question of substance presented on this appeal with respect to the appellant's conviction of the crime of burglary is whether the evidence obtained on the premises where the appellant was arrested was the product of an unlawful search and seizure. In determining that matter, this court must view the evidence and all inferences reasonably deducible therefrom in the light most favorable to the respondent. (*People* v. *Melody,* 164 Cal.App.2d 728, 734 [331 P.2d 72].)

There was substantial support in the testimony of Officer Northrup for the determination that the entry into the house was with Byrd's consent. Consequently no rights were violated by such entry. (*People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].) In view of the appellant's appearance which warranted a belief in good faith on the part of Officer Northrup that he was then under the influence of a narcotic, the arrest of appellant Rogers was proper. (*People* v. *Alcala,* 169 Cal.App.2d 468, 471 [337 P.2d 558]; *People* v. *Corrao,* 201 Cal.App.2d 848, 852-853 [20 Cal.Rptr. 492]; see also *People* v. *Smith,* 141 Cal.App.2d 399, 403 [296 P.2d 913].) The search of the bedroom which Rogers appeared to be occupying was warranted without the necessity of first obtaining a search warrant since it was incident to a lawful arrest. (*People* v. *Elliott,* 186 Cal.App.2d 178, 183 [8 Cal.Rptr. 795].) The seizure of the items of property found in the bedroom in the course of the search for

narcotics was justified because the nature of the articles and the circumstances under which they were found were amply sufficient to suggest to a reasonable mind that the goods were stolen. (See *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Ransome,* 180 Cal.App.2d 140, 146 [4 Cal. Rptr. 347].)

This court has given consideration to a matter not discussed in the brief filed on behalf of the appellant but which appears on the face of the record. ▉ The appellant denied the allegations in the information as to four prior felony convictions. On cross-examination the appellant admitted that he had suffered such convictions. The general rule is that such an admission is relevant only with respect to the matter of the defendant's credibility and is available to the People for the purpose of impeachment only; it is not proof of the allegations contained in the information. (*People* v. *Carrow,* 207 Cal. 366, 368-369 [278 P. 857]; *People* v. *Hamm,* 145 Cal. App.2d 242, 244 [302 P.2d 345]; *People* v. *Batwin,* 120 Cal. App.2d 825, 828 [262 P.2d 88].) ▉ But evidence otherwise incompetent as proof of the existence of a particular fact may be received for that purpose where a defendant stipulates thereto. (*People* v. *Zavaleta,* 182 Cal.App.2d 422, 430 [6 Cal.Rptr. 166].) ▉ The consent of the appellant to such use of his admissions on cross-examination appears to be implicit in the statement of his counsel in his presence made immediately after the trial judge had stated that he found the appellant guilty of the offense charged. The pertinent excerpt from the record is as follows: "MR. SHIBATA [deputy public defender]: . . . even though I think this defendant perhaps would not be considered normally eligible for probation with his record, perhaps it is better if we have a [probation] report. . . . As for the alleged priors, I think we could stipulate that the Judge could find on the basis of all the evidence presented here, and any additional evidence. THE COURT: Yes, I'll find in addition, since he so testified, that he did have those priors. MR. SHIBATA: Yes. I think I would prefer to have a probation report, your Honor. THE COURT: Yes, I think it is perhaps a good thing, even though you may not wish it, Mr. Rogers. . . ." There is, accordingly, sufficient support for the finding that the allegations of the information with respect to prior felony convictions were true.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Files, J., concurred.