[Crim. No. 8761. Second Dist., Div. Two. Oct. 8, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. GUADALUPE JOSE HERRERA, Defendant and Appellant.

William G. Emslie, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—In an information filed by the district attorney appellant, Guadalupe Jose Herrera, was charged with possession of heroin in violation of section 11500 of the Health and Safety Code, and two prior felony convictions, one for breaking and entering in New Mexico and a prior narcotics conviction. He was found guilty by the court sitting without a jury. The narcotics prior was found to be true, the breaking and entering prior was found not to be true. Probation was denied and appellant was sentenced to state prison. A motion for new trial was denied. Defendant appealed from the judgment on the ground that evidence introduced was obtained as the result of an illegal search and seizure, because the arrest was without probable cause, and on the further ground that there was insufficient evidence to establish the corpus delicti because it was not shown that the substance found in his possession was heroin.

On April 11, 1962, the arresting officer and his partner

went to the appellant's rooming house and there identified themselves to the manager, seeking information about a male Mexican living in one of the upstairs rooms. The manager said there was a Mexican of the description given by the officers, by the name of Guadalupe Herrera, renting a room upstairs. Access to the upstairs is gained by an outside staircase, and the officers proceeded upstairs to a porch or landing with a doorway leading to a hallway inside the upper portion of the rooming house. The door was locked but the officers could see through a screen or glass. They remained outside the door approximately 15 or 20 minutes when they observed the appellant and two other men come out of one of the rooms and walk toward the doorway leading to the landing. When they opened the door the officers went in, identified themselves, and said they wanted to ask some questions.

After being qualified as a narcotics expert, the arresting officer testified that he observed what he considered to be hypodermic marks on the appellant's left wrist caused by the illegal use of narcotics. There were additional marks on the appellant's forearm. The officer then shone a light in the appellant's eyes and the pupils were pinpointed. This means that there was little or no reaction to light in the pupils, and indicated, in the opinion of the officer, that the appellant was under the influence of narcotics at the time. The officer further testified that the appellant's "speech was low and mumbled and at times he appeared almost to nod off or like he was about to go to sleep." He also said that "[t]his would substantiate my earlier opinion that the defendant was under the influence of narcotics." The other two men had no marks on their arms and their eyes appeared normal. They were ultimately released from custody.

The officer's testimony is also to the effect that appellant consented to a search of his room. He said that "[w]e asked the defendant if he had any narcotics in his room. He stated, 'No. Go ahead and look.' He then produced a key from his pocket and unlocked the door to the room that we had just seen him come out of." The appellant testified that he did not give the officer permission to enter his room, and that the officer in fact took the key out of his pocket, without permission, unlocked the door to the room, and proceeded to search. Pursuant to this search a hypodermic outfit, a number of empty gelatin capsules, three portions of green balloons containing a white powder and a rubber finger stall containing a quantity of white powder were found hidden in the upholstery

of a chair in appellant's room, and a rent receipt was found in the dresser.

The appellant's first contention, that the arrest was made without probable cause and therefore the resulting search was not incident to a valid arrest and the results of that search could not be introduced into evidence, cannot be sustained. ■ Where there is a search without a warrant a prima facie case that the search and seizure were illegal has been established, and the burden is upon the prosecutor to show proper justification. (*People* v. *Haven*, 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *Tompkins* v. *Superior Court*, 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].) In the instant case to carry this burden there must have been probable cause for arrest, and the respondent cannot rely upon the alleged consent of the appellant if the arrest itself was illegal. ■ In *People* v. *Haven*, *supra*, 59 Cal.2d 713, 719, the court cited cases in which there was language to the effect that a search made pursuant to an unlawful entry or arrest is still valid, then said: ''A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest, however, is inextricably bound up with the illegal conduct and cannot be segregated therefrom. Accordingly, language in the cited cases to the contrary is disapproved.'' ■ But if there was probable cause for the arrest then it does not matter whether there was actual consent or not, for a search made incidental to a valid arrest is legal if made contemporaneously in time and place with the arrest. (*People* v. *Cicchello*, 157 Cal.App.2d 158, 162 [320 P.2d 528]; *People* v. *Winston*, 46 Cal.2d 151, 162 [293 P.2d 40]; *Ker* v. *State of California*, 374 U.S. 23, 41 [83 S.Ct. 1623, 10 L.Ed. 2d 726, 743]; *People* v. *Gorg*, 45 Cal.2d 776, 781 [291 P.2d 469]; 44 Cal.Jur.2d § 49, p. 378.) ■ Here there was probable cause for the arrest, and the subsequent search of the appellant's room was justified and reasonable.

■ In *People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967], the court stated the test as ''Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] Probable cause may exist even though there may be some room for doubt. [Citation.] ... The test in such case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial.''

(See *Ker* v. *State of California, supra,* 374 U.S. 23, 34-35 [83 S.Ct. 1623, 10 L.Ed. 2d 726, 739].)

■ Appellant contends that there was no reason for placing the appellant under surveillance, and thus no justification for the officers' lurking outside the hallway for 15 to 20 minutes when they had no information that the appellant was engaged in any unlawful activity. There was no clandestine observation such as was condemned in *Bielicki* v. *Superior Court,* 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288]. The officers were on the landing, plainly visible outside the locked door, with the permission of the manager. There was no trespass or invasion of the appellant's right of privacy. When the officers observed the appellant and others in the hallway they had a right to stop them and question them. (*People* v. *Newberry,* 204 Cal.App.2d 4 [22 Cal.Rptr. 23]; *People* v. *Di Blasi,* 198 Cal.App.2d 215, 219-220 [18 Cal.Rptr. 223].)

■ Under section 11721 of the Health and Safety Code the state of being under the influence of narcotics is a misdemeanor. Therefore, when the arresting officer, a Los Angeles policeman attached to the narcotics division and trained in that field, observed the marks on the appellant's arm, noted his pinpointed pupils, and saw his general somnolent condition, it was reasonable for him to conclude that appellant was under the influence of narcotics and that an offense was being committed in his presence, for which an arrest could be made without a warrant. (*People* v. *Di Blasi, supra,* 198 Cal.App.2d 215, 220; *People* v. *Rogers,* 207 Cal.App.2d 254, 259 [24 Cal.Rptr. 324]; *People* v. *Newberry, supra,* 204 Cal.App.2d 4, 8; *People* v. *Alcala,* 169 Cal.App.2d 468, 471 [337 P.2d 558].)

In *People* v. *Ferguson,* 214 Cal.App.2d 772, 776 [29 Cal. Rptr. 691], the court held that the mere observation by officers of what they believe to be hypodermic marks, without more, is insufficient cause on which to base an arrest. But here there were such additional factors as made the arrest reasonable.

■ There being probable cause the arrest and subsequent search of the appellant's apartment were justified. Even though the arrest took place outside the appellant's room and in the hallway, the room was within the immediate control of the appellant, and its search was incidental to the arrest and contemporaneous with it. (*People* v. *Cicchello, supra,* 157 Cal.App.2d 158, 163; *Hernandez* v. *Superior*

*Court,* 143 Cal.App.2d 20 [299 P.2d 678] ; *People* v. *Jackson,* 198 Cal.App.2d 698 [18 Cal.Rptr. 214].)

██ The appellant's second ground of appeal, that "There was an insufficiency of competent evidence to establish the corpus delicti of the offense charged, and to support the judgment of conviction," must also be rejected. This contention is based upon the necessity of proving that a defendant prosecuted under section 11500 of the Health and Safety Code was actually in the possession of a narcotic. The only direct evidence offered by the prosecution on the contents of the "white powder" found in appellant's possession came from the arresting officer who testified without objection that in his opinion the contents was heroin. But respondent does not rely principally upon this evidence. Defendant admitted that the substance found in his room was a narcotic. "Q. At any time in these proceedings were you handcuffed? A. Yeah. I was handcuffed. I was handcuffed after he found narcotics. ... Q. You said that you were handcuffed after the officer found the narcotics; is that what you said? A. Yes, sir. Q. You knew where they were then? A. Sir? Q. You knew where they were then? ['They,' referring to the narcotics.] A. I knew." Testimony of the defendant is competent to establish the corpus delicti of the crime for which he is accused. ██ "It is, of course, elementary and unquestioned that a defendant who chooses to *testify* is just as competent to establish the corpus delicti as any other witness. [Citations.]" *(People* v. *Ditson,* 57 Cal.2d 415, 445-446 [20 Cal.Rptr. 165, 369 P.2d 714].)

The judgment is affirmed; appeal from order denying new trial is dismissed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied November 1, 1963, and appellant's petition for a hearing by the Supreme Court was denied December 4, 1963.