[Crim. Nos. 7545, 7546. Second Dist., Div. Four. Dec. 19, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK
DI BLASI et al., Defendants and Appellants.

(Two Cases.)

Harry E. Weiss, F. Walter French and Alexander L. Oster for Defendants and Appellants.

Stanley Mosk, Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, Frank Di Blasi and Richard S. Farr were jointly charged with the violation of section 11500 of the Health and Safety Code of California, a felony, in that on or about September 16, 1960, they had a narcotic, heroin, in their possession. Each defendant entered a plea of "not guilty" and the case was set for trial November 28, 1960.

An amendment to the information as to defendant Frank Di Blasi was filed, charging that before the commission of the offense charged in the information, this defendant had suffered a prior conviction of a felony in the Superior Court of the State of California on November 30, 1959, to wit, a violation of section 11500 of the Health and Safety Code. Each defendant waived his right to a trial by jury.

Defendant Di Blasi denied the prior conviction. Each defendant was found guilty as charged and made a motion for a new trial which motion was denied. Defendant Frank Di Blasi waived his right to a jury trial as to the determination of the prior conviction as alleged in the amended information and stipulated that a determination of the prior was to be made by the court on the probation officer's report. The court found that the prior as alleged in the information was true. Each defendant's application for probation was denied and each defendant was sentenced to the state prison for the term prescribed by law. Each defendant appealed from the judgment and from the order denying the motion for a new trial and upon motion in this court the two appeals were consolidated.

Defendants were arrested on September 16, 1960. On that date Police Officer B. A. Mick and his partner, Officer Gile, had been driving southbound on Barry Avenue. At about 9 p. m. they observed defendant Di Blasi and his codefendant Farr, seated in the front seat of a car which was parked in front of 3718 Barry Avenue, the residence of Di Blasi.

Farr was seated behind the wheel of the vehicle and Di Blasi was in the front seat. Officer Mick recognized defendant Di

Blasi whom he had seen before. The officers stopped their vehicle and approached the automobile in which the two men were seated. Officer Gile went to the right side of the car, and Officer Mick went to the left side, where Farr was seated. He recognized Farr from a "mug shot" that he had seen. This was a "mug shot" that had been on the Santa Monica Police Department bulletin board, stating Farr was wanted for burglary in Santa Monica. He asked Farr for his name which Farr gave. Officer Mick then asked Farr if he was not wanted for burglary in Santa Monica, to which Farr responded that he had been to the preliminary hearing on the burglary charge the day previous.

While talking to Farr, Officer Mick shined his flashlight into the automobile. He did not open the doors of the car before inspecting the inside with his flashlight. The window on the driver's side of the vehicle was down. He noticed that the eyes of both Farr and Di Blasi seemed to be pinpointed. He noticed also that Di Blasi was bleeding from an area in his left arm. He saw Di Blasi rub the inner edge of that arm with the other hand in the area where the arm was bleeding. The bleeding area on defendant Di Blasi's arm was discernible from four feet away at the time of the arrest. (Officer Mick saw other marks on the arm after Di Blasi was out of the car and the arm had been examined.) Based upon the bleeding arm, the condition of Di Blasi's eyes, and from the fact that Di Blasi "appeared to be clammy, more or less perspiring on a rather cool night," Officer Mick concluded that Di Blasi was under the influence of a narcotic. Mick had been a police officer for the City of Los Angeles for over six years. In the course of his career he had made over 200 arrests of narcotic users and had seen several hundred more.

He asked Farr and Di Blasi to step out of the automobile, so that he and his fellow officer could examine them further. Needle marks were found upon the arms of both men. Officer Mick noticed that even though it was dark the eyes of both men were pinpointed. For comparison purposes Officer Mick examined Officer Gile's eyes, noting that the light from the flashlight caused them to contract to a pinpoint, while on examination of the eyes of Farr and Di Blasi, he found that their eyes were already pinpointed and showed no reaction to the light from the flashlight.

Normally, the pupil of the eye is dilated in the dark, and when exposed to light it contracts. Officer Mick noticed that

Farr had needle marks along the vein of his right forearm. On one of these marks he noticed what appeared to be a serum. On the basis of this examination Officer Mick concluded that Farr had just taken an injection at the point where the serum was detected.

Photographs were taken of defendants' arms at the West Los Angeles police station following the arrest. These photographs depict the left arm of each defendant in the region of the inner side of the elbow. One photograph shows a tattoo on Di Blasi's inner left arm. Near the top portion of this tattoo was the wound from which Officer Mick testified Di Blasi had been bleeding at the time of the arrest. There are other needle marks shown in the photograph of Di Blasi's left arm.

Officer Mick did not make an immediate search of the vehicle at the time of the arrest for the reason that there were three children in the back seat who required attention. The officers radioed for assistance and were subsequently joined by four other officers.

Immediately following the arrest Officer Mick radioed the Los Angeles Police Department, records and identification division, and received information from this source that Farr was still wanted for the burglary charge in Santa Monica. However, after arriving at the West Los Angeles police station he telephoned the Santa Monica Police Department and was advised that Farr was no longer wanted on the burglary, and that the preliminary hearing on that charge had been held.

Following the arrest Officers Mick and Gile went into the Di Blasi home with Di Blasi and conducted an unproductive search of the house and the front and back yards. During this time the other officers searched the vehicle.

On the floorboards of the vehicle by the right hand door, Officer Korby found a cellophane-wrapped package containing two pieces of notebook or school paper, wrapped in the shape of a bindle. Inside this bindle he found a brownish-white substance which appeared to be heroin.

It was stipulated that the substance therein contained was in fact heroin. The bindle and contents were received in evidence by the court over objections of defendants.

Both defendants contend the judgment of conviction is based solely upon unlawfully obtained evidence after an unlawful arrest and an illegal search and seizure. These contentions are without merit.

There is nothing unreasonable in an officer's questioning persons outdoors at night where their unusual conduct

warrants it. (*People* v. *Simon*, 45 Cal.2d 645, 650, 651 [290 P.2d 531].)

▮ From Officer Mick's extensive experience in the field of narcotics and based upon his observations of the two defendants, as recited above, he justly formed the opinion that defendants were under the influence of narcotics and the search of the car was therefore reasonable. (*People* v. *Blodgett*, 46 Cal.2d 114 [293 P.2d 57].)

Defendant Di Blasi's contention is that "revocation of probation and judgment effected from conviction of unlawfully obtained evidence can not stand." This contention is also without merit. We have heretofore concluded that the search was reasonable and the evidence conclusive after a lawful arrest. ▮ As said in *People* v. *Silverman*, 33 Cal.App.2d 1, 5 [92 P.2d 507] : ". . . The discretion of the court to revoke an order of probation is 'very broad'. . . . No formal procedure is provided for presenting charges of violation of probation. ▮ The court may make an order revoking probation based upon facts presented in an informal charge from which the court has reason to believe that the defendant has violated his probation or is unfit to be at large." (Cases cited.)

Defendant Farr contends he did not personally waive a trial by jury. Article I, section 7 of the California Constitution in part reads: "The right of trial by jury shall be secured to all, and remain inviolate; . . . . A trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court by the defendant and his counsel. . . . . "

▮ As stated in *People* v. *Rodriguez*, 169 Cal.App.2d 771, 779 [338 P.2d 41] : "Although the right to a jury trial is guaranteed to every person charged with a felony (*People* v. *Hall*, 199 Cal. 451 [249 P. 859]) and it is the responsibility of the trial court to see that this right is protected, we find nothing in the statutes or law which requires the trial judge personally to advise an accused that he is entitled to a trial by jury; nor are we aware of any rule which precludes the well-known practice of the district attorney in the presence of the trial judge and in open court, of advising defendants of their right to a jury trial. Certainly defendant can neither successfully deny that he knew he was entitled to be tried before a jury nor claim he was unaware that he was being asked if he wanted the matter tried by a jury or by the court. Nor do we find anything in the law which prohibits counsel for the People from questioning the defendant in open court

concerning his desire to waive a trial by jury; or requires the court to personally put such questions eliciting the waiver to the defendant.''

In the case before us defendant Farr was asked by the deputy district attorney in the presence of his counsel and in open court:

"The Court: *People* vs. *Di Blasi and Farr*.

"Mr. French: That is ready, your Honor, for a court trial.

"Mr. Klynn: A court trial, your Honor.

"The Court: All right. You may take the waivers.

"Mr. Ritzi: Mr. Farr, your attorney tells me you want to be tried by the court, although you are entitled to a jury trial.

"Defendant Farr: That is correct.

"Mr. Ritzi: Do you waive, counsel?

"Mr. French: Yes.

"Mr. Ritzi: Likewise, Mr. Di Blasi, your attorney tells me you desire to be tried by the court rather than a jury; is that true?

"Defendant Di Blasi: Yes, sir.

"Mr. Klynn: Join in the waiver, your Honor.

"Mr. Ritzi: The People join.''

The cause was continued from November 28, 1960, to November 29, 1960, and the record reflects the following:

"The Court: *People* vs. *Di Blasi and Farr*. The defendants and their counsel are now present?''

"Mr. French: Yes, your Honor.

"Mr. Klynn: Yes, your Honor.

"The Court: You may proceed. There was a jury waiver taken yesterday, wasn't there?

"Mr. French: Yes, your Honor.

"Mr. Klynn: Yes, your Honor.

"The Court: All right. You may proceed.''

Defendant's counsel indicated that defendant personally waived his right to a jury trial and wanted to be tried by the court, sitting without a jury. If the sole indication of defendant's desire *personally* to waive trial by jury had been the expressed waiver by his attorney in his behalf then clearly the waiver would have been insufficient. In *People* v. *Holmes,* 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583], the sole questions answered by the defendant were the following:

" . . . . . . . . . .

"Mr. Aisenson: Nathan Boyd Holmes, is that your true and correct name?

"The Defendant: Yes.

"Mr. Aisenson: Mr. Holmes, do you understand you have been charged in indictment 250814 with the crime of selling heroin, do you understand that?

"The Defendant: Yes.

"Mr. Aisenson: And do you further understand that you have a right to a trial by jury to determine whether or not you are guilty or innocent of that charge?

"The Defendant: Yes.

"Mr. Aisenson: And do you also know that it is stated in the same information that you have been previously convicted of a felony pertaining to narcotics; do you understand that?

"The Defendant: Yes.

"Mr. Aisenson: Do you understand that you have a right to trial by jury to determine whether or not that is true or not?

"The Defendant: Yes.

". . . . . . . . . . "

The Supreme Court held in the *Holmes* case (*supra*) that the defendant ". . . did not express in words a waiver of his right to a jury trial, and it has been uniformly held that the waiver must be so expressed and will not be implied from a defendant's conduct." [Citing cases.] A review of each of the cases cited in support of this proposition indicates that in no instance did the defendants therein *personally* express in open court their election or choice between the two alternatives being offered them, namely, trial by jury or trial by the judge sitting without a jury. In those cases the choice of the defendants between the two types of trial, or the waiver by the defendants of trial by jury, was only inferred or implied by the conduct of the defendants or by the words of their counsel and therefore held to be insufficient. ▪▪▪ It is our view that if a defendant is clearly advised that he has the choice of one or the other of the two types of trial and if he clearly selects trial by the court instead of trial by jury, then he has just as effectively waived trial by jury as if he had said specifically, "I waive trial by jury." There is no particular "magic" in the word "waive." It is not a word of common usage, particularly among illiterates. In fact, in actual practice some defendants have construed the word "waive" to convey the meaning intended when it is spelled "wave." In one instance when the judge instructed the defendant that he would have to personally waive, the defendant raised his arm and timidly "complied" by waving to the judge. However, even the illiterate can understand that if he has the choice

of one or the other of two things and he chooses one, then he has in effect abandoned the other.

 Although a defendant's waiver can not be inferred and language must be used, no particular language is necessary as long as the words actually employed disclose in their ordinary meaning the defendant's intention to be tried by the court without a jury. (*People* v. *Bastio,* 55 Cal.App.2d 615, 617-618 [131 P.2d 614].)

 In *People* v. *Pincus,* 131 Cal.App. 607, 609 [21 P.2d 964], the defendant was informed by the court: ''. . . You are entitled to be tried by a jury of 12 persons, or you may waive the jury and be tried by the court without a jury. What do you want to do? Whatever you want to do we will agree to.

''*The Defendant*: I want to be tried before you.

''*The Court*: You want to be tried by the court without a jury. Now, Mr. Fox,'' (defendant's counsel) ''do you waive a jury in behalf of your client?

''*Mr. Fox*: Yes, your Honor.''

In the latter case, the court held this jury waiver to be clearly sufficient. While it is true that in the latter case the court commendably elaborated a little further, upon the meaning of the right to a trial by jury, than was done in the case before us, nevertheless, in essence what the court did do was to advise the defendant that he had a choice between two types of trial and to ask him to make that choice. We feel in the instant case this same choice was clearly extended to the defendant and that he elected personally and expressly to be tried by the court instead of by jury thereby effectively waiving his right to a trial by jury.

 We do not agree with defendant Farr's final contention that the evidence is insufficient to sustain the judgment.

 In considering the sufficiency of the evidence to support the judgment the appellate court determines only whether there is any substantiating evidence in the record which supports the conclusion reached. The appellate court is required to assume the truth of the facts impliedly found and all inferences fairly to be drawn from the evidence. (*People* v. *Tom Woo,* 181 Cal. 315, 326 [184 P. 389]; *People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911]; *People* v. *Kessler,* 62 Cal.App.2d 817 [145 P.2d 656].)

 From our review of the evidence in this case we conclude that it was substantial and sufficient to support the

judgment of the trial court. For the foregoing reason, the judgment and order denying the new trial are affirmed.

Burke, P. J., and Balthis, J., concurred.

A petition for a rehearing was denied January 16, 1962, and the petition of appellant Richard S. Farr for a hearing by the Supreme Court was denied February 14, 1962.