[Crim. No. 6511. Second Dist., Div. One. Aug. 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST RODRIGUEZ, Defendant and Appellant.

Ernest Rodriguez, in pro. per., and Howard C. McArdle, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—On September 15, 1958, defendant appealed from judgment of conviction, and in propria persona filed opening and closing appellate briefs. The judgment was affirmed by this court on April 22, 1959 (*People* v. *Rodriguez,* 169 Cal.App.2d 771 [338 P.2d 41]). Petition for rehearing was denied May 14, 1959, and petition for hearing by the Supreme Court denied June 18, 1959. Subsequently *Douglas* v. *California,* 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 914] was decided and pursuant to direction of the California Supreme Court this court recalled the remittitur, vacated the judgment and appointed counsel to represent appellant. This is the second time the appeal has been heard by this court.

Defendant was charged with selling heroin on August 31 and September 3, 1957 (§ 11500, Health & Saf. Code) ; two prior felony convictions were alleged (grand theft, 1944; violation, Dangerous Weapons Control Act, 1954). The cause was submitted on the transcript of the testimony taken at the preliminary hearing. Defendant was found guilty as charged; although he admitted the prior felony convictions, the trial judge made no finding thereon.

## COUNT I

On August 31, 1957, Deputy Burley went to the home of one Womack, an informant, whom he searched, then with Womack drove to 41st and Compton to meet defendant and buy heroin; around 11 a.m. defendant drove up in a 1951 or 1952 green Ford and they both entered the vehicle; after a conversation wherein defendant said of Deputy Burley, ''This man doesn't use,'' he let the deputy out of the car saying, ''We will leave him on the corner and I will go around the corner and give him [Womack] the stuff.'' The deputy gave Womack $125, then Womack and defendant drove away leaving Burley on the sidewalk. Deputy Sells had been surveilling Burley and observed him with defendant and Womack and saw defendant and Womack drive away; he then picked up Burley and proceeded to 33d and Compton where they observed defendant and Womack conversing. Sells returned

Burley to 41st and Compton and drove around again observing defendant and Womack on 33d Street. About 10 minutes later defendant and Womack drove up and the latter got out of the car; defendant left immediately and Womack handed the deputy a blue rubber balloon containing heroin. Deputy Sells observed defendant drive Womack back to Burley in a 1952 green Ford, drop him off and drive away, and Womack hand Burley the blue balloon. Deputy Vacio also had Burley under his surveillance on August 31 and saw Burley alone and at times with Womack and Sells.

## Count II

On September 3, 1957, Womack contacted Deputy Burley who went to his residence where the deputy listened to a telephone conversation on an extension; a male voice asked Womack if he was ready to do business and said, "meet me at 41st and Compton around 11 o'clock." Again Burley searched Womack and under the surveillance of Deputies Vacio and Guindon went to 41st and Compton. Defendant drove up in a 1953 or 1954 Mercury with two children; Deputy Burley gave Womack $125; Womack entered defendant's car and they drove away; soon they returned, Womack got out of the car and handed the deputy a small wax paper containing heroin. Around 6 p.m., Deputy Burley went alone to the corner of 57th and Central to pay the balance due on the 11 a.m. transaction; he waited one-half hour and finally defendant drove up in the Mercury; Burley handed him $92; defendant told him he owed $5 more, but could give it to him later; this made up the total of $225 paid to defendant for one ounce of heroin.

Womack, called by the People, testified that he knew Burley; they had met a man at 41st and Compton on August 31 and September 3 and bought heroin from him. He testified substantially the same as Burley that he made two narcotic purchases at the deputy's instance in the same manner described by Burley, including the amount of money paid and the amount owing on the second purchase; but he denied that defendant was the man who sold him the heroin on either occasion, and called him "Roy" (last name unknown) not "Rod."

Defendant denied that he either drove or owned a green Ford or Mercury, knew Womack on August 31 or September 3 and ever had a transaction involving narcotics; he testified he was in New Orleans at the time in question.

Appellant contends that he did not expressly waive his right to a trial by jury, he made no clear and unambiguous waiver and his response was inadequate; and that he was unaware of the legal effect of submitting the case to the trial court on the transcript of the testimony taken at the preliminary hearing.

When the cause was called for trial defendant was present with private counsel. In open court the deputy district attorney said to defendant "You are entitled to have a jury of 12 people here and determine this matter. Counsel has indicated to this court you wish to waive your right to a jury and have the Court hear this matter sitting without a jury, is that what you want to do?" Defendant responded, "I want to submit the transcript." The prosecutor repeated, "Submit it on the transcript?" to which defendant stated, "That's correct." Defendant's counsel, who was standing beside him replied, "Counsel joins in the waiver," to which the prosecutor added, "People join" and then offered the stipulation that the court may read and consider the testimony taken at the preliminary hearing and all exhibits offered and received at this time, reserving the right of both parties to offer additional testimony. Defense counsel responded: "We will accept the stipulation other than the latter part of additional testimony. Neither side will present any additional testimony." The court said, "All right"; the prosecutor stated: "In other words, the stipulation with the exception that either side may put on additional testimony?" and defense counsel answered, "Yes."

 This is not a situation in which defendant expressed no words in waiver of his right to a jury trial and a waiver could not be implied from his conduct, as in *People* v. *Holmes*, 54 Cal.2d 442, 443 [5 Cal.Rptr. 871, 353 P.2d 583], and cases cited therein; here defendant, represented by private counsel, asked by the prosecutor if he wanted to waive his right to a jury and have the court hear the matter sitting without a jury, replied that he wanted "to submit the transcript." To be certain there was no misunderstanding, the prosecutor repeated, "Submit it on the transcript?" and defendant replied, "That's correct." While no stereotype language expressing a jury waiver was used by defendant, it is obvious that his words taken in their ordinary meaning and in context show his intention to waive a jury and submit the cause to the court. Although a defendant's waiver cannot be inferred and language must be used (*People* v. *Holmes*, 54 Cal.

2d 442, 443 [5 Cal.Rptr. 871, 353 P.2d 583]), no particular language is necessary as long as the words actually employed disclose in their ordinary meaning defendant's intention to be tried by the court sitting without a jury. (*People* v. *Di Blasi,* 198 Cal.App.2d 215, 220-223 [18 Cal.Rptr. 223]; *People* v. *McDaniel,* 157 Cal.App.2d 492, 497 [321 P.2d 497]; *People* v. *Beckworth,* 151 Cal.App.2d 842, 843 [312 P.2d 270]; *People* v. *Bastio,* 55 Cal.App.2d 615, 617-618 [131 P.2d 614]; *People* v. *Pincus,* 131 Cal.App. 607, 609 [21 P.2d 964].) ▉ Here defendant personally expressed in open court his election between a jury trial and submitting the cause to the judge and expressly chose the latter saying, "I want to submit the transcript." The words in their ordinary meaning reflect defendant's clear intention to submit the case to the court on the transcript of the testimony taken at the preliminary hearing thereby waiving a jury trial. "It is our view that if a defendant is clearly advised that he has the choice of one or the other of the two types of trial and he clearly selects trial by the court instead of trial by jury, then he has just as effectively waived trial by jury as if he had said specifically, 'I waive trial by jury.' There is no particular 'magic' in the word 'waive.' " (*People* v. *Di Blasi,* 198 Cal.App.2d 215, 222 [18 Cal.Rptr. 223].)

▉ No provision of law requires the judge to personally advise an accused of his right to a trial by jury and that he may waive that right, or requires him to make any finding that defendant understands the waiver. Here the proceedings were had before the trial judge who personally acknowledged the stipulation to submit the matter to the court sitting without a jury. Having conferred his approval on the proceedings to submit the cause, the judge thereby indicated that he found the waiver to be valid and properly understood by both defendant and his counsel. The trial judge in a criminal case is not obliged to explain to defendant "the nature and consequences of his action in waiving a jury trial where he is, as in the case at bar, represented by counsel and fails to show that either he or his counsel has been misled as to the result which might occur from his waiving a jury trial. . . ." (*People* v. *Lookadoo,* 66 Cal.2d 307, 311 {57 Cal.Rptr. 608, 425 P.2d 208].)

Appellant claims that the chain of evidence pointing to his guilt was not established, arguing that while a sale may have taken place on the two occasions there is no proof that he was the seller, a fact he says corroborated by Womack.

Although Womack testified that the man's name was "Roy," not "Rod," and denied that defendant sold him the narcotics, and defendant maintained he was in New Orleans at the time, defendant was positively identified as being with Womack and Burley on both occasions by two witnesses—Deputy Burley testified that the man with him and Womack on August 31 was defendant, and Deputy Sells testified that he saw Womack and defendant drive away from Burley, later twice saw them conversing on 33d Street and then saw defendant drive Womack back to Burley; Burley testified that the man who drove up to where he and Womack were waiting for him on September 3 was the defendant with whom Womack drove away and later returned with the narcotic, and that it was defendant he met that evening to pay the balance due on the purchase. In addition, the man Deputy Burley identified as the defendant on each occasion made statements relative to his obtaining the "stuff"—on August 31 defendant said, "This man [Burley] doesn't use," and upon confirmation of this by Burley, defendant said, "We will leave him [Burley] on the corner and I will go around the corner and give him [Womack] the stuff"; on September 3, Burley did not have sufficient funds to pay Womack the entire amount, thus later in the day at a pre-arranged place he met defendant who drove up in the same Mercury, and Burley testified: "I stated to the defendant, 'Rod, I didn't think you would make it.' I told him I had been waiting for quite a while. He said that sure, he was going to make it because he had some money coming to him and he was going to pick that up. . . . I then gave the defendant $92.00. The defendant then stated that I owed him $5.00. I told him that the informer had told me he had given him $153.00 and that we owed him $92.00 to make the total of $250.00 for the ounce of stuff. The defendant stated that that was O.K., he would get the $5.00 at a later date."

▮ Without considering any of Womack's testimony, we can only conclude that the testimony of the officers sufficiently supports the conclusion that it was defendant who sold the narcotics through Womack to Deputy Burley. As to Womack's testimony, it was the same as Burley's except that he maintained the seller was not the defendant. The trial judge had the right to accept the bulk of Womack's testimony as true and reject that part relating to the identity of the seller (*People* v. *Matlock,* 51 Cal.2d 682, 695 [336 P.2d 505]; *People* v. *Johnston,* 48 Cal.2d 78, 83 [307 P.2d 921]; *People* v.

*Bodkin,* 196 Cal.App.2d 412, 414 [16 Cal.Rptr. 506]) ; and it is not difficult to understand why he did so. Womack was then serving time in Folsom; he was evasive and clearly biased against Deputy Burley who had arrested him for sales; and it was obvious that he did not intend to implicate defendant. Before Womack was even questioned concerning either transaction he volunteered "You got the wrong man. That ain't the man I met." He testified the man's name was "Roy." For impeachment the prosecutor asked Womack if he gave a statement to a federal agent in which he admitted purchasing heroin from defendant with money obtained from Deputy Burley; Womack answered, "I did." Later Womack insisted that the name he gave was "Roy" not "Rod" [Rodriguez].

 In a supplemental brief filed by appellant in addition to his counsel's opening brief, he makes several contentions none of which has merit. First, he claims that in submitting the cause on the preliminary transcript he was deprived of his right of confrontation and cross-examination. It should be noted that defense counsel extensively cross-examined Deputy Burley and was an active participant in the preliminary hearing making numerous pertinent objections, arguments and a motion to dismiss. It is fairly obvious that after being confronted with the testimony taken at the preliminary hearing and discussing the facts with defendant, his counsel, as a matter of trial strategy, advised him to waive a jury trial (*People* v. *Garrison,* 246 Cal.App.2d 343, 351 [54 Cal.Rptr. 731]) ; it is patent on the face of the record that defendant chose to waive a trial by jury on this advice. Thereafter, defense counsel entered into the stipulation to submit the cause on the transcript. "[A]ny objection to the use of the preliminary hearing transcript at the trial was waived when defense counsel, in defendant's presence and without objection by him, joined in the stipulation regarding the use of that transcript. [Citations.]" (*People* v. *Foster,* 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976] ; *People* v. *Cruz,* 244 Cal.App.2d 137, 140 [53 Cal.Rptr. 354].)

 The contention that defense counsel at the trial did not undertake essential research and investigation and call witnesses as requested, is not supported by the record; matters not of record cannot be urged on appeal. (*People* v. *Jackson,* 230 Cal.App.2d 485, 490 [41 Cal.Rptr. 113].)

Finally, appellant says he was not afforded adequate assistance of counsel in that the latter did not fully apprise him of the consequence of the submission of the case on the prelimi-

nary transcript, and the trial was reduced to a mere sham. There is nothing in the record to show that defense counsel did not discuss the matter of jury waiver with defendant; to the contrary, it is apparent from the record that such a discussion in fact took place prior to the time the cause was called for trial. This is shown not only by the prosecutor's statement to defendant in open court, "[defense] counsel has indicated to this court you wish to waive your right to a jury . . . ," but by defendant's response, "I want to submit the transcript," no mention having theretofore been made of submitting the cause on the transcript.

■ As to the criticism of counsel's representation of him, "defendant has the burden . . . of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.' " (*People* v. *Reeves,* 64 Cal. 2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) ■ Appellant has not sustained this burden. Further, the record fails to show as it did in *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal. Rptr. 863, 386 P.2d 487], that he did not have diligent and reasonably competent representation by trial counsel nor does it show that he availed himself of the privilege of complaining at the trial level that his counsel was not adequately representing him. (*People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal. Rptr. 633, 363 P.2d 865].) The explanation for this is found in the factual complexion of the case which demonstrates that counsel exercising his professional judgment adopted such strategy and tactics as he deemed to be in the best interests of his client and that defendant's dissatisfaction with his conduct of the case did not develop until on appeal. Defense counsel was the "manager of the lawsuit" (*Wilson* v. *Gray,* 345 F.2d 282, 290) in control of the case and had the authority and duty to determine all questions of strategy and trial tactics; and it was within the scope of his authority and he had the right to advise defendant to submit the cause on the preliminary transcript. (*People* v. *Foster,* 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976].) That the strategy may have been unrewarding is no ground for the conclusion that counsel was incompetent or lacked diligence in representing his client. (*People* v. *Robillard,* 55 Cal.2d 88, 96 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Reeves,* 64 Cal.2d 766, 773 [51 Cal.Rptr. 671, 415 P.2d 35].) Trial strategy and tactical decisions of counsel will not be reviewed with the hindsight of an appellate court and except in rare cases it should not attempt to second-guess counsel. (*People* v. *Brooks,*

64 Cal.2d 130, 139-140 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Reeves,* 64 Cal.2d 766, 772-773 [51 Cal.Rptr. 671, 415 P.2d 35].) There is nothing to show that the trial was a sham. Defense counsel made several objections and a motion to strike which was granted, then defendant was given the opportunity to and he did testify on his own behalf. Thereafter his counsel argued the case to the trial judge. Upon conviction he moved for a new trial which was later denied. Counsel tried to make the most of defendant's case; we see no error in judgment, no improper trial tactics or strategy and no inadequate preparation or consultation with defendant.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 23, 1969.