[Crim. No. 18098. Second Dist., Div. One. May 10, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
NORA SUE KEMICK, Defendant and Appellant.

COUNSEL

Joel Dwork, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Paul H. Sweeney, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Defendant was charged in two counts with possession of restricted dangerous drugs (§ 11910, Health & Saf. Code [seconal and benzedrine]). After entering a plea of not guilty she moved under section 1538.5, Penal Code, to suppress the evidence. The matter was submitted to the court on the transcript of the testimony taken at the preliminary hearing. The motion was denied whereupon she withdrew her plea of not guilty as to count I, was rearraigned thereon and entered a plea of guilty thereto. Count II was dismissed. She appeals from the judgment (order granting probation).

On March 1, 1969, around 8 p.m. State Patrol Officer Bianco found

defendant lying unconscious on the roadway on Slauson Avenue two feet from the edge of the road surrounded by a group of people; he summoned an ambulance but before it arrived a car drove by and fired two shots into the crowd and at him causing him to leave in pursuit. Around 8:08 p.m. and just after the ambulance left, Officer Fiscus arrived; he asked what had occurred and after talking to various bystanders determined that there had been no accident but that a person unconscious had been taken to the hospital. At 8:30 p.m. he saw defendant in the emergency room of the Presbyterian Hospital lying on a guerney with a nurse and doctor in attendance; defendant was having her stomach pumped; he talked with the doctor who said that in his opinion her condition appeared to be an overdose of some type of narcotic and from the color and substance of the residue being brought from her stomach it appeared to be seconal. After her stomach was pumped defendant sat up and the officer talked to her; her speech was extremely slurred, her eyes had little reaction to his flashlight and when he attempted to converse with her he was unable to get any coherent response. Officer Fiscus advised the doctor he believed "she was in violation of section 647f, drunk," and upon her release from the hospital would be in his custody for booking and transportation to the station. He asked the nurse where defendant's clothes were because she would have to be dressed to be taken to the station; the nurse pointed to a blouse and vest-type sweater lying on a chair 10 feet from the guerney upon which defendant was lying. He searched them and found in the left front pocket of the sweater a foil packet containing five capsules of seconal, and a benzedrine tablet.

■ The basis of this appeal is appellant's claim that there was no probable cause to arrest her for a violation of section 647, subdivision (f), Penal Code,[1] therefore the evidence was the product of an illegal search and seizure. Without merit are her contentions that (1) in the absence of a determination by Officer Fiscus at the time of her arrest that she had no prescription for the seconal of which she was under the influence, he had no probable cause to believe she was in violation of section 647, subdivision (f); (2) the officer did not have probable cause to believe she was under the influence of a drug; and (3) the term "public place" as used in section 647, subdivision (f), is indefinite as to render the

---

[1]Section 647, Penal Code, provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

"(f) Who is found in any public place under the influence of intoxicating liquor, any drug, . . . in such a condition that he is unable to exercise care for his own safety or the safety of others. . . ."

section so vague as to be unconstitutional, and the emergency room of the hospital was not a "public place" within the meaning of that section.

■ The Attorney General with commendable candor has raised in his brief the issue whether the record discloses that when she entered her plea of guilty defendant freely and intelligently waived her constitutional rights to a confrontation of witnesses against her, trial by jury and against self-incrimination. However, we cannot accept his view that the record satisfies the requirements of the California law subsequent to *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]. Preceding her plea the trial judge explained to defendant that she was charged in count I with a violation of section 11910, Health and Safety Code, and asked her if she knew what that meant; she replied, "Possession of dangerous drugs," after which she withdrew her plea of not guilty to count I. The prosecutor asked her if she understood the nature of the charge—possession of seconal without a prescription—and she responded in the affirmative. Asked if she had discussed the matter with her counsel, she answered, "Yes"; and to the question, "Has he explained your constitutional rights to you?" she said, "Yes." She then stated she was pleading guilty freely and voluntarily, no promises had been made to induce her to plead guilty and she was pleading guilty because in truth and fact she was guilty.[2]

---

[2]"MR. SWANK: Your Honor, she wants to enter a plea of guilty to Count I.
"THE COURT: Is that your desire, Miss Kemick?
"THE DEFENDANT: Yes.
"THE COURT: What are you charged with in Count I? Do you know, Miss Kemick? The charge of 11910 of the Health and Safety Code, in your own words what is the name of that?
"THE DEFENDANT: Possession of dangerous drugs.
"THE COURT: All right.
"You may proceed, Mr. Frazier.
"MR. FRAZIER: Nora Sue Kemick, do you now withdraw your plea of not guilty to Count I so you can enter a plea of guilty to that charge?
"THE DEFENDANT: Yes.
"MR. FRAZIER: Do you join in that, Counsel?
"MR. SWANK: Yes, I do.
"MR. FRAZIER: May that be withdrawn, your Honor?
"THE COURT: It may be withdrawn.
"MR. FRAZIER: Miss Kemick, do you understand the nature of this charge against you, the possession of seconal without a prescription?
"THE DEFENDANT: Yes.
"MR. FRAZIER: And have you discussed this matter with your attorney, your lawyer here? Have you talked it over with him?
"THE DEFENDANT: Yes.
"MR. FRAZIER: Has he explained your Constitutional rights to you?
"THE DEFENDANT: Yes.
"MR. FRAZIER: And are you pleading guilty freely and voluntarily?
"THE DEFENDANT: Yes.
"MR. FRAZIER: Has anybody made you any promise of any nature whatsoever to induce you to plead guilty?

Defendant's guilty plea was entered July 24, 1969, after the decision in *Boykin* v. *Alabama*, 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], decided June 2, 1969. Absent in the record in *Boykin* were any questions by the court or statements by defendant regarding his pleas of guilty to five counts of robbery. The United States Supreme Court held that it cannot be assumed from a silent record that a guilty plea has been voluntarily made and that the three important constitutional rights—trial by jury, confrontation and against self-incrimination—necessarily forfeited by such a plea have been freely and intelligently waived. (395 U.S. at p. 242 [23 L.Ed.2d at p. 279].) *Boykin* does not set any precise standards by which the adequacy of the record in disclosing a free and intelligent waiver of the rights given up by reason of a plea of guilty can be judged; the court therein simply urges "utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (395 U.S. at pp. 243-244 [23 L.Ed.2d at pp. 279-280].) In the instant case such solicitude is amply evident in the rather substantial colloquy between defendant and the trial judge and then the prosecutor, and defendant's own statements wherein she admitted she knew and understood the nature of the charge against her, had discussed her plea with her attorney, her attorney had explained to her her constitutional rights[3] and she was pleading guilty freely and voluntarily because she was in fact guilty. The record goes far beyond the wholly silent record disapproved in *Boykin*, but it does not contain either direct mention of defendant's right to a jury trial or a waiver thereof.

Prior to *Boykin* v. *Alabama*, 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], the California constitutional requirement (art. I, § 7) that an accused must expressly and personally waive trial by jury in open court did not apply to pleas of guilty because the guilty plea itself was considered to be an express waiver of a jury trial (*In re Jingles*, 27 Cal.2d 496, 499 [165

---

"THE DEFENDANT: No.

"MR. FRAZIER: You are pleading guilty because in truth and in fact you are guilty and for no other reason; is that right?

"THE DEFENDANT: Yes.

"MR. FRAZIER: In this Information No. A409682 you are charged in Count I with a violation of Section 11910 of the Health and Safety Code, a felony. It is alleged that on or about the 1st day of March, 1969, in Los Angeles County, you did willfully, unlawfully, and feloniously have in your possession a restricted dangerous drug in the nature of a barbituric acid, to wit, sodium secobarbital, also known as seconal. How do you plead to this charge, guilty or not guilty?

"THE DEFENDANT: Guilty."

[3]Immediately before the change of plea and when defendant submitted her motion under section 1538.5, Penal Code, on the transcript of the testimony taken at the preliminary hearing, the trial judge explained her constitutional right to confront the witnesses, which she stated she understood and which she expressly waived.

P.2d 12]; *People* v. *Johnson*, 164 Cal.App.2d 470, 479 [330 P.2d 894]; however, *Boykin* held that for a guilty plea to be valid there must be some showing in the record that defendant freely and intelligently waived his right to trial by jury as well as to confront his accusers and against compulsory self-incrimination. Thus, since *Boykin* requires a jury waiver upon entry of a plea of guilty and California law requires that a waiver of a right to a jury trial must be expressed in words by the defendant and cannot be implied from the defendant's conduct (art. I, § 7, Cal. Const.; *People* v. *Holmes,* 54 Cal.2d 442, 443-444 [5 Cal.Rptr. 871, 353 P.2d 583]), the record here, although establishing that her counsel advised her of her constitutional rights, is not sufficient to show an express waiver by her of her right to a jury trial.

That an express waiver of a trial by jury by an accused is required in California for a valid plea of guilty is clearly suggested in *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. *Tahl* which sets up more stringent standards than *Boykin,* holding that "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited of the person of the defendant. . . ." (1 Cal.3d at p. 132), was decided November 7, 1969. It must be conceded that the record in our case does not meet this standard but whether *Tahl* has retroactive application is of little consequence to the outcome in the light of the absence of any expressed jury waiver. However, insofar as concerns the issue of the jury waiver, the statements in *Tahl,* while dictum, unquestionably point up the reality of the existing law in California after *Boykin.* *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], involved a plea of guilty entered before *Boykin;* the colloquy between defendant, the trial judge and his attorney is almost identical with that in the instant case. In an habeas corpus proceeding the judgment was reversed insofar as it related to the imposition of the death penalty but the court upheld the conviction entered on the plea of guilty taking the view that the standards enunciated in *Boykin* v. *Alabama* should be applied prospectively only, and found that the guilty plea was in conformity with the then existing California law. However, in footnote 4 the court proclaimed at page 129: "California law has long required that waiver of a jury trial be express. (*People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583].) However, prior to *Boykin* v. *Alabama,* discussed *infra,* it was not necessary that acceptance of a guilty plea be preceded by a specific waiver of the right to a jury trial, or any other right (except the right to counsel, where none was present). Therefore, although the present record would be insufficient now to constitute a valid waiver of a jury trial, this does not necessarily preclude holding

the plea of guilty to be acceptable under then existing California law." After a discussion of the construction of the decision in *Boykin* the court continued: "Similarly we can presume petitioner was advised of his rights of confrontation and against self-incrimination from his acknowledgment that his attorney had explained his 'constitutional rights' to him. However, there was an apparent deficiency regarding a specific waiver of petitioner's right to a jury trial, since in California such a waiver must be expressed *in words by the defendant* and cannot be implied from the defendant's conduct. (Cal. Const., art. I, § 7; *People* v. *Holmes* (1960) *supra,* 54 Cal.2d 442; *People* v. *Walker* (1959) 170 Cal.App.2d 159 [338 P.2d 536]; cf. *People* v. *McDaniel* (1958) 157 Cal.App.2d 492 [321 P.2d 497]; see fn. 4, *ante.*) Waiver by counsel is not sufficient; a fortiori, having been 'advised' by counsel is not sufficient. On the other hand, there can be little dispute under the unusual circumstances of this case that the record demonstrates petitioner actually knew of his right to a jury, since a jury had already been empaneled when he changed his plea. To *Tahl,* a jury was not an esoteric concept but an existential reality in the guise of 12 identifiable veniremen before whom he stood face to face. But if it is now necessary that an accused specifically waive his right to a jury, California law would seem to require some express courtroom statement by the accused and to preclude waiver by even the most redoubtable inference from the record.

"However, we need not resolve this specific issue since it is our view that *Boykin* necessitates a more precise showing on all phases of a guilty plea than mere inferences however plausibly drawn from circumstances on the record." (Pp. 131-132.)

There is a lack of authority in California which makes reference to or relies on the foregoing passages in *Tahl* with the exception of *People* v. *Mosqueda,* 5 Cal.App.3d 540 [85 Cal.Rptr. 346], in which there is but a passing allusion thereto. This too appears to be dictum and was part of a discussion in answer to appellant's argument that he was entitled to a new trial because he had not testified on his own behalf nor expressly waived his right to do so. The court pointed out that the right to testify is not analogous to a right to a jury trial and continued: "In this state, the right to a jury trial in a criminal case is deemed a sacred right and of such fundamental proportions that by constitutional mandate it may be waived only 'by the consent of both parties, expressed in open court by the defendant and his counsel, . . .' (Cal. Const., art. I, § 7.) It is for this reason that it is repeatedly stated that the waiver of a jury trial must be expressed in words by the defendant and cannot be implied from his conduct. (*In re Tahl,* 1 Cal.3d 122, 131 [81 Cal.Rptr. 577, 460 P.2d 449]; *People* v. *Holmes,* 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]; *People* v. *Pechar,* 130 Cal.

App.2d 616 [279 P.2d 570]; *People* v. *Garcia,* 98 Cal.App. 702 [277 P. 747].)" (P. 545.)

The record not having established that defendant expressly waived her right to a trial by jury upon entry of her plea of guilty we are compelled to reverse the judgment.

Wood, P. J., and Thompson, J., concurred.