[Crim. No. 35831. Second Dist., Div. Two. Nov. 12, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BRADLEY DANA MARTIN, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Monica Knox, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BEACH, J.**—Following a court trial, appellant was found guilty of burglary and sentenced to state prison. Appellant appealed, claiming (1) a

violation of Penal Code section 654's prohibition against multiple prosecutions, and (2) an improper waiver of his right to a jury trial. By opinion filed June 11, 1980, we affirmed. We subsequently granted rehearing. We affirm.

## FACTS:

Appellant was arrested for possession of marijuana and possession of a sawed-off shotgun found in his car, after a traffic stop and lawful search. After appellant was booked, Deputy Begey ran a check on the shotgun and discovered that it had been reported to the police as stolen.

Subsequent to appellant's guilty pleas to the misdemeanor weapon and narcotic offenses, an information was filed charging him with burglary. Appellant pleaded not guilty. Appellant's motion to dismiss the information pursuant to Penal Code section 654, which prohibits multiple prosecution, was denied.

## DISCUSSION:

### 1. Multiple Prosecution

■ Appellant contends that having already pleaded guilty to possession of a sawed-off shotgun (Pen. Code, § 12020) the state thereafter was precluded by the multiple-prosecution prohibition of Penal Code section 654 from prosecuting him for the burglary in which the shotgun had been stolen.

Penal Code section 654, which prohibits both multiple punishment and multiple prosecution, provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." The prohibition against multiple punishment is designed to ensure that a defendant's *punishment* is commensurate with his criminal liability. ■ The proscription against multiple *prosecution*, on the other hand, is a procedural safeguard against needless harassment and the waste of public funds. (*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206].)

There is no indication in the record before us, and appellant does not contend otherwise, that the People had knowledge of appellant's involvement in the burglary at the time he pleaded guilty in the municipal court to the charge of possession of a sawed-off shotgun. Appellant, however, maintains that the People should be charged with such knowledge.

The theory underlying the prohibition against multiple prosecution was expressed by the *Kellett* court as follows: "When . . . the prosecution is or should be aware of more than one offense *in which the same act or course of conduct plays a significant part*, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Id.* at p. 827, italics added, fn. omitted.)

Appellant was arrested for possession of a sawed-off shotgun on Friday afternoon, January 26, 1979. He pleaded guilty to that charge on January 30, 1979. On January 31, 1979, the day after appellant's guilty plea, a burglary investigator from the Burbank Police Department questioned him about the December 31, 1978, burglary of the home from which the gun was stolen. In support of his argument that the prosecution should have been aware of appellant's involvement in the burglary when he pleaded guilty in the shotgun matter, appellant cites *People* v. *Flint* (1975) 51 Cal.App.3d 333 [124 Cal.Rptr. 269] and *People* v. *Wasley* (1970) 11 Cal.App.3d 121 [89 Cal.Rptr. 418]. Those two cases, however, are factually distinguishable from the present case. In *Wasley*, the court held that the defendant, an ex-convict, could not be separately prosecuted for armed robbery and possession of a weapon used in that robbery. And in *Flint*, it was held that a defendant who was arrested for drunk driving while driving a stolen car could not, after his guilty plea to drunk driving, be subjected to a subsequent prosecution for grand theft of an automobile and joy-riding. In *Wasley* and *Flint*, the focus of both prosecutions was on a single incident: the armed robbery in *Wasley*, the drunk driving in *Flint*. To prosecute the defendant in *Wasley* again for his connection with the very weapon used in the robbery would have involved, to borrow a phrase from the opinion in *Flint* at page 338 of 51 Cal.App.3d, "a recycling of much of the same evidence" used by the People to support the earlier prosecution. The same can be said of *Flint*, where "the same incident which furnished the evidence that defendant was driving in an intoxicated

condition, also supplied proof that what he was driving was an automobile he had stolen." (*Id.* at p. 38.)

Here, unlike the situation in both *Flint* and *Wasley*, the sawed-off shotgun was not an instrumentality in the commission of the burglary. When a week after the burglary had been committed, appellant was found in possession of a shotgun taken in the burglary, such possession constituted an offense separate from the burglary in time, place and character. (*People* v. *Howell* (1966) 245 Cal.App.2d 787, 790 [54 Cal.Rptr. 92].)

In the matter at bench, the two crimes demanded separate proofs. (*People* v. *Flint, supra,* 51 Cal.App.3d 333, 338.) As to the burglary charge, evidence was presented of a forced entry of the victim's home and the removal therefrom of various items, including a Sankyo electric digital clock and a shotgun which were subsequently found in appellant's possession. Evidence was also presented of appellant's presence at the home at the time of the burglary. The shotgun offense would have been supported simply by evidence of appellant's possession of a sawed-off shotgun, without regard to where he had acquired it. (Pen. Code, § 12020.) Evidence in the two cases, therefore, was for the most part mutually exclusive, the only common ground being the fact that the sawed-off shotgun found in appellant's possession had been taken in the burglary committed a week earlier. Under these circumstances, this minimal overlap in the evidence did not require a joinder of these cases. (*People* v. *Hurtado* (1977) 67 Cal.App.3d 633, 636-637 [136 Cal.Rptr. 774].)

Double prosecution is prohibited when "the prosecution is or should be aware of more than one offense *in which the same act or course of conduct plays a significant part* . . . ." (*Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 827, italics added.) Here "the same act or course of conduct" did not play "a significant part" with regard to each crime. The evidentiary pictures which had to be painted to prove the burglary and the possession of a sawed-off shotgun were sufficiently distinct so as to permit separate prosecutions of the two offenses. (*People* v. *Hurtado, supra,* 67 Cal.App.3d 633, 636-637.)

2. *Waiver of Jury Trial*

■  Appellant contends he is entitled to a reversal because he never waived his right to a jury trial. Appellant relies on *People* v. *Holmes*

(1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583], holding that a waiver of the right to a trial by jury must be expressed and will not be implied. Appellant also relies on *People* v. *Kemick* (1971) 17 Cal.App. 3d 419 [94 Cal.Rptr. 835]. The case at bench is distinguishable from *Holmes* and *Kemick.*

We begin with the fundamental law that the waiver of the right to a jury trial in a criminal case must be "expressed in open court by the defendant and the defendant's counsel." (Cal. Const., art. I, § 16.) *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], relying in part on *People* v. *Holmes, supra*, 54 Cal.2d 442, teaches that waivers of fundamental procedural rights, such as the right to trial by jury, cannot be implied but must appear from the record as having been expressly made. The waiver cannot be implied even though there is the added fact of proceeding to trial without jury. Significantly, in neither *Tahl* nor *Holmes* did the defendant or his counsel say unequivocally, "the defendant will waive his right to trial by jury," or any other similar words. By contrast, at bench appellant's counsel said exactly that. The record here shows the following was said:

"THE COURT: Gentlemen, we're back on the record. We're in session. What's your pleasure?

"MR. BERRY [deputy prosecutor]: It is the People's intention, Your Honor, to conduct a court trial, waive jury and to submit on the testimony of Mr. Walter Semonew as contained within the transcript of the Preliminary Hearing and put on police officers Latta and Begey to testify directly before the court.

"THE COURT: All right.

"MR. LARSEN [defense counsel]: That is suitable with the defendant, Your Honor.

"Stand up, please.

"*The defendant, Your Honor, will waive his right to trial by jury.*

"*You understand your right to have 12 people here to hear the case, is that correct?*

"THE DEFENDANT: Yes, sir. (Italics added.)

"MR. LARSEN: And you understand by stipulating to the testimony of Mr. Semonew, who testified at the Preliminary Hearing, you will waive your right to have him in court and to ask him further questions? Do you understand that?

"THE DEFENDANT: Yes, I do.

"MR. LARSEN: To the extent his testimony might incriminate you in some way, you'll be giving up that right. Do you understand that, too, sir?

"THE DEFENDANT: Yeah.

"THE COURT: Go ahead, counsel.

"MR. LARSEN: I join in the waiver.

"THE COURT: The waivers are accepted."

The foregoing shows unequivocally that it was appellant's own counsel who was speaking for appellant after having him stand and then saying on his behalf "The defendant, Your Honor, will waive his right to trial by jury. You understand your right to have 12 people here to hear the case, is that correct?" There was no intervening statement by anyone between those two phrases. The clear meaning of what was said is (1) that appellant's counsel was speaking for him, and (2) to demonstrate that appellant knew what was being "waived," appellant was asked if he understood what was in fact being waived on his behalf. The question to appellant defined this right that was being waived. *Holmes* is significantly different. There the only comment relating to waiver of jury trial was as follows. The trial court asked: "Is this to be a jury trial?" Defendant's lawyer answered: "No, I believe it will be a court trial." That is all that was said with reference to the selection between a court and jury trial. Counsel's saying he "believe[s] it will be a court trial" without any immediate affirmative response by defendant obviously is not an express waiver. The fact that in *Holmes* a later question defining trial by jury is similar to the question asked of appellant at bench, does not here compel a finding of ineffective waiver. To the contrary, we conclude that there was a valid waiver because the words of the appellant's attorney at bench expressly saying appellant *"will waive his right to trial by jury"* together with appellant's affirmative reply combine to make an express waiver *unlike* the situation in *Holmes*.

In *People* v. *Kemick, supra,* 17 Cal.App.3d 419, relied on by appellant, there was no mention of the right to a trial by jury of 12 people in the record. That case therefore is inapposite. At bench appellant was informed that a jury trial was the right to have 12 people hear the case and it was clear that he understood that he was giving up that particular right by submitting the matter to the court on the basis of prior transcripts.

The case at bench is not one of implication which is rejected by *Tahl* nor is this a waiver solely by defense counsel which is likewise rejected by *Tahl.* (*In re Tahl, supra,* 1 Cal.3d 122, 131.) In keeping with the spirit and the letter of *Tahl,* the privilege against self incrimination, the right to confront witnesses and the right to a jury trial were enumerated at bench. A response relative to each was elicited from the person of appellant. (*Id.* at p. 132.) Under the federal and state Constitutions, *Tahl* and *Holmes,* it is not necessary that in waiving the right to jury trial only certain specific words be used. The fact that the waiver at bench with a little more effort could have been better expressed does not mean that the present waiver is legally insufficient. The defendant does not have to say precisely by rote, "I give up my right to a trial by jury." "Something short of this procedure *may* in a proper context, be held sufficient;..." (*In re Tahl, supra,* at p. 133.)

The instant case is similar to *People* v. *Rodriguez* (1969) 275 Cal. App.2d 946 [80 Cal.Rptr. 397] and to *People* v. *Gloria* (1980) 108 Cal.App.3d 50 [166 Cal.Rptr. 138]. In *Rodriguez,* as in the instant case, the jury waiver was made together with and immediately after the defendant was asked if he wanted to submit the matter on a transcript. The defendant was told that he had a right to have a jury hear the case and he responded that he wanted to submit the matter on the transcript. Distinguishing the case from *Holmes,* the court held that "[w]hile no stereotype language expressing a jury waiver was used by defendant, it is obvious that his words taken in their ordinary meaning and in context show his intention to waive a jury and submit the cause to the court." (*Id.* at p. 950.)

In *People* v. *Gloria, supra,* 108 Cal.App.3d 50, the defendant was asked (1) *if he understood* what the right to a jury trial was and (2) *if he understood* that he would not have a jury trial if he pleaded guilty. His response to both questions was in each instance the single word "yes." As in the case before us, the defendant in *Gloria* was not specifically asked "Do you give up the right to trial by jury?" nor did he ever

say "I give up my right to trial by jury" nor make any similar statement. Nonetheless, the Court of Appeal expressly and correctly refused to exalt form over substance and held the foregoing to be a valid waiver of the right to trial by jury. We agree with the court's analysis in *Gloria*. The differences between *Gloria* and the case at bench are so slight in comparison to the similarities that we deem the analysis of *Gloria* appropriate and applicable here. Its teaching assists our determination.

No particular language is necessary to waive a jury trial so long as the words employed disclose in their ordinary, common sense, fair meaning and context an intention to be tried by the court sitting without a jury. (*People v. Gloria, supra*, 108 Cal.App.3d 50; *People v. Rodriguez, supra*, 275 Cal.App.2d 946, 951; *People v. DiBlasi* (1961) 198 Cal.App.2d 215, 220-223 [18 Cal.Rptr. 223].)

We hold there was a valid waiver in this case. The part of the statement by appellant's attorney "You understand your right to have 12 people here to hear the case, is that correct?" which immediately followed the first part, i.e. "The defendant, Your Honor, will waive his right to trial by jury"; and therefore formed a part of the question to which the defendant answered, "Yes, sir," cannot be torn away from the entire statement and thus isolated in an attempt to make it appear that appellant's reply was simply to the definition of a jury and not to his understanding waiver of that right.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 11, 1981.